**RAZZANO WALSH & TORRES, P.C.**
JOSEPH C. RAZZANO
JOSHUA D. WALSH
Pan American Building
139 Murray Blvd. Suite 100
Hagåtña, Guam 96910
Telephone: (671) 989-3009
Facsimile: (671) 989-8750
Electronic Service: eservice@rwtguam.com

*Attorneys for Plaintiff*
*Jane Doe*

## IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| JANE DOE,<br><br>Plaintiff,<br><br>vs.<br><br>GUAM VISITORS BUREAU,<br>a *Guam public corporation*,<br>and GEORGE CHIU,<br>*in his individual capacity as*<br>*Chairman of the Board of Directors of*<br>*the Guam Visitors Bureau*,<br><br>Defendants. | Civil Case No._____<br><br>**COMPLAINT;**<br>**JURY TRIAL**<br>**DEMAND** |

### INTRODUCTION

Plaintiff JANE DOE ("Plaintiff" or "Doe") brings this civil action against Defendant GUAM VISITORS BUREAU ("Defendant" or "GVB"), an autonomous public corporation organized under Guam law, separate and distinct from the Government of Guam, arising from a prolonged course of severe and pervasive sexual harassment, sexual assault, retaliation, and institutional failure perpetrated by

1

GVB's then-President and General Manager, former governor of Guam CARL T.C. GUTIERREZ ("Mr. Gutierrez"), while acting under color of law. Mr. Gutierrez's conduct created an abusive and hostile work environment, and altered the terms and conditions of Plaintiff's employment.

Plaintiff also brings this action against GEORGE CHIU, in his individual capacity as Chairman of the Board of Directors of the Guam Visitors Bureau ("Chairman Chiu"), for intentionally allowing Mr. Gutierrez to perpetuate sexual harassment against Plaintiff on a GVB trip to Saipan.

This action seeks redress under 42 U.S.C. § 1983 for violations of the Fourteenth Amendment, attributable to Defendant's official policies, customs, and practices, including the actions of a final policymaker, the absence of effective human resources oversight, the failure to train, supervise, discipline, or protect employees, and the tolerance, ratification, and concealment of misconduct following credible findings, which were the moving force behind the deprivation of Plaintiff's rights. This Complaint also asserts Guam statutory and common law claims, including Guam's public policy prohibiting sexual harassment, sexual assault, hostile work environments, retaliation, negligent supervision, negligent training, and negligent hiring and retention.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under the Constitution and laws of the United States, including 42 U.S.C. § 1983 and the Fourteenth Amendment to the

2

United States Constitution, and has supplemental jurisdiction over Guam law claims under 28 U.S.C. § 1367(a) as they arise from the same case or controversy.

2. Venue is proper in this district under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this district. GVB is also a government agency located in Guam, and Chairman Chiu resides in Guam and is the Chairman of GVB in Guam.

**PARTIES**

3. Plaintiff, JANE DOE ("Plaintiff" or "Doe"), is an individual who resides in the Territory of Guam.

4. Upon information and belief, Defendant, GUAM VISITORS BUREAU ("Defendant" or "GVB"), is and has been a public corporation organized under the laws of Guam, with its principal place of business at 401 Pale San Vitores Road, Tamuning, GU 96913. Defendant is an autonomous public corporation that can "[s]ue or be sued in its own corporate name[.]" 12 GCA § 9105(c); GVB is not an instrumentality of the Government of Guam. *Bordallo v. Reyes*, 610 F. Supp. 1128 (D. Guam 1984), *aff'd*, 763 F.2d 1098 (9th Cir. 1985); *see also WSTCO Quality Feed and Supply, LLC v. Ada,* No. 17-CV-00127, 2018 WL 3244403, at *8 (D. Guam July 3, 2018).

5. GVB is not an arm of the Government of Guam for federal sovereign-immunity purposes. The federal arm-of-the-state question is governed by *Kohn v. State Bar of California*, 87 F.4th 1021 (9th Cir. 2023), and *Crowe v. Oregon State Bar*, 112 F.4th 1218 (9th Cir. 2024). The Government Claims Act's procedural reference

to "public corporation[s]" in 5 G.C.A. § 6102 governs the application of Claims Act procedures within Guam law and does not control the federal arm-of-the-state inquiry.

6.      Guam did not structure GVB to share the Government of Guam's sovereign immunity. GVB was created as a public corporation that may sue and be sued in its own corporate name. 12 G.C.A. § 9105(c). The District Court of Guam and the Ninth Circuit have both determined that GVB is not an instrumentality of the Government of Guam. *Bordallo v. Reyes*, 610 F. Supp. 1128 (D. Guam 1984), *aff'd*, 763 F.2d 1098 (9th Cir. 1985). GVB's functions—tourism marketing, visitor industry promotion, and partnership management—are not core sovereign functions of the Government of Guam.

7.      GVB operates with a Board of Directors that exercises independent policymaking authority over GVB's operations and personnel. Upon information and belief, the Governor of Guam does not exclusively appoint or remove GVB's Board members and does not exercise direct managerial control over GVB's day-to-day affairs.

8.      GVB maintains independent revenue sources, including its statutory allocation of the hotel occupancy tax, membership fees, and partnership revenues. Upon information and belief, money judgments against GVB are paid from GVB's own funds and not from the general fund of the Government of Guam.

4

9. Because GVB satisfies none of the *Kohn* factors as an arm of Guam, GVB is a "person" subject to suit under 42 U.S.C. § 1983, and is not protected by Guam's inherent sovereign immunity from suit in this Court.

10. Defendant George Chiu is a resident of Guam and the Chairman of the GVB during the operative time covering the allegations in this complaint, and is sued in his individual capacity.

## GENERAL ALLEGATIONS

### Employment and Authority

11. On or about July 15, 2019, Plaintiff began employment with GVB as Executive Assistant to the President & CEO and Board Secretary.

12. In or about 2020, Mr. Gutierrez became President and General Manager of GVB and Plaintiff's direct supervisor. Mr. Gutierrez exercised significant authority over Plaintiff's employment, duties, travel, and working conditions.

### Sexual Harassment and Sexual Assault

13. On or about October 30, 2022, during a required work trip to Osaka, Japan, Mr. Gutierrez insisted Plaintiff follow him to his hotel room for medication, where he grabbed her arm, stated he wanted to kiss her, physically prevented her from leaving, and forcibly kissed her, including sticking his tongue in her mouth, then removed her blouse and bra, commented on her body, and kissed her breasts.

14. On or about November 19–22, 2022, during another required work trip to Osaka, while Plaintiff was suffering from a migraine, Mr. Gutierrez entered her hotel room without consent, ignored her request to leave, kissed her against her will,

5

pressed her on the bed, removed her pants, and performed nonconsensual cunnilingus while she was disoriented.

15. On or about October 23–30, 2023, during another required work trip to Osaka, Mr. Gutierrez entered Plaintiff's hotel room, pulled her toward him, kissed her, and while both were clothed, placed a massager against both their genitals and turned it on, stating he needed to "cum".

16. On or about June 4–6, 2024, during a required work trip to Saipan, Mr. Gutierrez paid for Plaintiff's travel using his personal credit card and booked hotel rooms for Plaintiff and himself at a separate hotel from other staff; when Plaintiff brought hairspray to his room at his request, he insisted she enter, compelled her due to the power imbalance, then kissed her, placed her on the bed, asked her to perform oral sex (which she refused), and digitally penetrated her against her will, triggering emotional distress and PTSD symptoms.

17. On or about August 20, 2024, after being summoned to Mr. Gutierrez's office by a colleague, Mr. Gutierrez closed the door, ordered Plaintiff to come closer, pulled her in, kissed her by forcing his tongue in her mouth, and, despite her objection, resumed aggressive kissing while stating he needed to "cum," until a knock on the door allowed her to leave.

18. Between approximately October 2022 and August 2024, Mr. Gutierrez repeatedly subjected Plaintiff to escalating acts of unwanted sexual harassment, coercion, and sexual assault during official travel and in GVB offices, under color of his authority.

6

19. Plaintiff experienced trauma-induced freezing and dissociation, exacerbated by illness, psychological shock, and the extreme power imbalance created by Mr. Gutierrez's position.

20. Plaintiff also experienced shame from being related by blood to Mr. Gutierrez and subjected to unwanted sexual harassment, coercion, and sexual assault.

21. Plaintiff also suffered from extreme fear from the retaliation that would come from Mr. Gutierrez's position as the President of GVB and power and influence as a former governor of Guam.

### Reporting, Investigation, and Institutional Failure

22. Plaintiff delayed reporting earlier incidents due to fear of retaliation, Mr. Gutierrez's role as agency head, lack of understanding how to report misconduct by the head of GVB, the absence of certified human resources staff, and the lack of a safe reporting infrastructure.

23. On August 22, 2024, Plaintiff verbally reported the harassment and assault to Defendant's legal counsel, who discouraged her from reporting and indicated the Board would minimize or "sweep it under the rug".

24. On November 14, 2024, Plaintiff submitted an official written complaint to the Board Chairman, George Chiu, detailing incidents from October 2022 to August 2024.

7

25. On November 20, 2024, Defendant acknowledged receipt and stated it intended to complete the investigation within 30 days, resolve complaints within three weeks after, and notify complainants within 90 days of the investigation start.

26. On December 13, 2024, Plaintiff was interviewed by a third-party law firm engaged by GVB to investigate her assertions and fully disclosed the sexual assaults.

27. Mr. Gutierrez, who had resigned, refused to participate on December 14, 2024, and no disciplinary action was taken.

28. The investigation was reportedly completed on January 2, 2025, and the Board reviewed the final investigative report on January 3, 2025, but no communication was sent to Plaintiff at that time.

29. Upon information and belief, the investigator concluded that Plaintiff's accounts were credible and recommended structural improvements.

30. On April 21, 2025, Plaintiff received Defendant's first written update summarizing findings and noting possible policy violations, without mention of discipline or systemic corrective action.

31. On May 13, 2025, the new agency president, Régine Biscoe Lee, suggested Plaintiff be reassigned, but no formal plan was provided.

32. Defendant failed to act transparently or promptly, delayed communicating outcomes for more than three months after Board review, refused to provide the investigative report to Plaintiff upon request, did not assess whether

8

others were affected, and took no disciplinary action against Mr. Gutierrez, who refused to cooperate and faced no consequences.

## Pattern, Practice, and Culture

33. Upon information and belief, Mr. Gutierrez's boorish sexual behavior was part of a broader culture of sexual misbehavior occurring during GVB activities and tolerated by GVB's Board, including routine use of official, government-funded travel as a pretext to visit brothels and other sexually themed establishments, fostering a culture of sexual permissiveness and pressuring accompanying male employees to participate or acquiesce.

34. Upon information and belief, there existed a broader culture of sexualized misconduct, abuse of authority, intimidation, retaliation, and tolerance of inappropriate behavior at GVB, including misuse of official travel for sexualized activities, pressure on employees to participate, repeated verbal abuse and humiliation, retaliation for raising concerns, discouragement of reporting, arbitrary enforcement of policies and favoritism, employee fear and lack of support, and failure by the Board and senior leadership to meaningfully investigate, discipline, or remediate despite warning signs and credibility findings in Plaintiff's case.

35. Upon information and belief, GVB's Board and senior leadership knew or should have known of these patterns through informal complaints, internal discussions, observable conduct, reputational knowledge, and routine oversight, yet failed to take prompt, effective corrective action.

36. These issues were known prior to and during the period of Plaintiff's harassment and assault and contributed to delayed reporting, heightened fear, and exacerbated harm.

## Lack of HR, Training, Retaliation, and
## Hostile Work Environment

37. At the relevant times, Defendant lacked certified Human Resources personnel, failed to conduct required annual harassment-prevention training, and failed to implement effective EEO reporting consistent with policy.

38. Following Plaintiff's protected activity, she experienced exclusion from meetings, increased scrutiny and isolation, denial of EEO support, chastisement by the Board Chairman for accessing EEOC protocols, and pressure from the new president to waive claims and transfer into a newly created, lower-ranked position.

39. Defendant did not provide Plaintiff with updates or support personnel during sensitive meetings, failed to timely communicate investigative outcomes, and suggested reassignment without a formal plan, contributing to a continuing hostile work environment.

40. Plaintiff experienced emotional distress, anxiety, and PTSD symptoms.

41. Defendant's misconduct constituted a continuing course of conduct that rendered Plaintiff's working conditions intolerable and directly caused her damages.

42. The acts of sexual harassment, sexual assault, retaliation, and institutional inaction alleged above constitute a single, continuing unlawful course of conduct and hostile work environment, each component of which contributed to the cumulative deprivation of Plaintiff's constitutional and statutory rights, and

10

which culminated in acts and omissions within the limitations period applicable to each cause of action pleaded below. *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002).

43. In addition, and in the alternative, each act of sexual assault and sexual harassment alleged above is an independently wrongful, discrete act that started its own limitations clock. *St. Clair v. County of Okanogan*, 154 F.4th 1154, 1166 (9th Cir. 2025) ("each sexual assault or act of abuse constitutes an 'independently wrongful, discrete act' for statute of limitations purposes"; "sexual misconduct need not beget sexual misconduct"). The June 4–6, 2024 incident in Saipan and the August 20, 2024 incident in GVB's offices each fall within all applicable statutes of limitations as discrete acts and are independently actionable, separate from and in addition to any continuing-violation theory pleaded with respect to the hostile work environment claims.

## COUNT ONE: 42 U.S.C. § 1983 – *MONELL* LIABILITY (Fourteenth Amendment)

44. Plaintiff realleges and incorporates by reference all preceding paragraphs.

45. Defendant GVB is a "person" within the meaning of 42 U.S.C. § 1983. GVB is a public corporation organized under Guam law, may sue and be sued in its own corporate name under 12 GCA § 9105(c), and is not an arm or instrumentality of the Government of Guam. *Bordallo v. Reyes*, 610 F. Supp. 1128 (D. Guam 1984), *aff'd*, 763 F.2d 1098 (9th Cir. 1985).

11

46. At all relevant times, Carl T.C. Gutierrez served as the President and General Manager of GVB and acted under color of territorial law.

47. Mr. Gutierrez's repeated acts of sexual harassment and sexual assault against Plaintiff between October 2022 and August 2024—including each of the incidents alleged above—were purposeful, invidious, and motivated by Plaintiff's gender. Those acts deprived Plaintiff of her right under the Equal Protection Clause of the Fourteenth Amendment to be free from intentional, gender-based discrimination by a state actor. *Sampson v. County of Los Angeles*, 974 F.3d 1012, 1023 (9th Cir. 2020); *Bator v. Hawaii*, 39 F.3d 1021, 1028 (9th Cir. 1994).

48. GVB is liable for that deprivation because each of the following official policies, customs, and practices was a moving force behind the constitutional violation. Plaintiff pleads these theories in the alternative.

## A. Custom and Practice

49. Courts sustain a section 1983 claim against a government entity for sexual harassment under the Equal Protection Clause where "the state employee's discriminatory conduct [is] representative of an official policy or custom of the institution, or [is] taken by an official with final policymaking authority." *Rost ex rel. K.C. v. Steamboat Springs RE-2 School District*, 511 F.3d 1114, 1125 (10th Cir. 2008). In the absence of a formal policy, it "may still be liable for the widespread and persistent practice of sexual harassment which constitutes a custom." *Id.*

50.     GVB maintained a widespread, longstanding, and well-settled custom and practice of tolerating, concealing, and facilitating sexualized misconduct by senior leadership during official agency travel and within GVB offices.

51.     That custom included: routine use of official, government-funded travel as a pretext for visits to brothels and other sexually themed establishments at the direction of senior leadership; assignment of younger female subordinates to accompany senior male officials on official travel without any legitimate business necessity; tolerance of repeated verbal and physical sexual conduct toward female subordinates; arbitrary enforcement of any nominal anti-harassment policy; informal pressure on employees to acquiesce or remain silent; and the absence of any meaningful Board-level oversight of the President's conduct on official agency business.

52.     That custom was so persistent, widespread, and known to GVB's Board of Directors and senior leadership—through informal complaints, internal discussions, observable conduct, and reputational knowledge—that it had the force of official policy. *Monell v. Department of Social Services*, 436 U.S. 658, 690–91 (1978).

### B. Ratification

53.     Under GVB's enabling statute and applicable Guam law, the GVB Board of Directors is the final policymaking authority for GVB on personnel matters concerning the President and General Manager.

54. On November 14, 2024, Plaintiff submitted a written complaint to Board Chairman George Chiu detailing Mr. Gutierrez's sexual harassment and sexual assault.

55. On December 13, 2024, Plaintiff was interviewed by a third-party law firm engaged by GVB to investigate her account, and she fully disclosed the sexual assaults. Upon information and belief, the investigator concluded that Plaintiff's accounts were credible and recommended structural improvements.

56. On January 3, 2025, the GVB Board reviewed the final investigative report. The Board took no disciplinary action against Mr. Gutierrez, communicated no outcome to Plaintiff for more than three months, refused to provide the investigative report to Plaintiff upon request, did not assess whether other employees were affected, and took no corrective structural action.

57. The Board's review of the credibility findings and its decision not to discipline, communicate, or correct constitutes ratification of Mr. Gutierrez's conduct and the basis for it by GVB's final policymaking authority. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).

**C. Failure to Train and Maintain Functional Reporting Infrastructure**

58. The constitutional duty of public-employer supervisors to investigate and act on known sexual harassment has been clearly established in the Ninth Circuit since at least *Bator v. Hawaii*, 39 F.3d 1021, 1028–29 (9th Cir. 1994).

59. Notwithstanding that established duty, at all relevant times GVB failed to provide its Board of Directors with any training on the Board's responsibility to

14

supervise the President and General Manager, to receive and investigate reports of harassment, or to act on known misconduct by senior leadership.

60. GVB also failed to employ certified Human Resources personnel, failed to train any existing personnel on the receipt, investigation, and handling of sexual-harassment complaints, failed to maintain a functional Equal Employment Opportunity reporting mechanism through which employees could report misconduct without exposure to retaliation by the person being reported, and failed to train its employees on the channels through which they could safely report misconduct by the President and General Manager.

61. The need for each of these training and infrastructure components is plainly obvious. The conduct alleged is not an unforeseeable misstep that defendants might be expected to avoid without training, but the institutional architecture that determines whether known sexual harassment by senior leadership is investigated, reported, and stopped. *City of Canton v. Harris*, 489 U.S. 378, 390 (1989).

62. GVB's Board of Directors knew, or in the exercise of reasonable care should have known, that the absence of these training and reporting structures in an agency whose senior leadership routinely traveled with junior female subordinates and engaged in known sexualized conduct created an obvious and substantial risk that constitutional violations would occur and would go unredressed.

63. GVB's failure to provide that training and to maintain that infrastructure, in the face of the known risk, reflects deliberate indifference to the

15

constitutional rights of GVB's employees, including Plaintiff. *Connick v. Thompson,* 563 U.S. 51, 61 (2011).

### D. Causation and Damages

64. Each policy, custom, and practice identified above was a moving force behind the constitutional deprivations Plaintiff suffered. *Monell,* 436 U.S. at 694; *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 404 (1997).

65. But for GVB's custom of tolerating sexualized misconduct, the Board's ratification of Mr. Gutierrez's conduct after its review of the investigative report, and GVB's failure to provide basic anti-harassment training and reporting structures, the constitutional violations alleged in this Complaint would not have occurred or would have been promptly redressed.

66. As a direct and proximate result, Plaintiff has suffered, and continues to suffer, severe emotional distress, anxiety, post-traumatic stress disorder, loss of enjoyment of her employment, lost wages and benefits, future medical and therapeutic expenses, and other compensatory damages in an amount to be proven at trial, but in no event less than $20,000,000.00.

67. Plaintiff is entitled to compensatory damages, nominal damages, declaratory and injunctive relief, costs, and reasonable attorney's fees under 42 U.S.C. § 1988.

16

## COUNT TWO: 42 U.S.C. § 1983 –
## INDIVIDUAL LIABILITY AGAINST CHAIRMAN GEORGE CHIU
### (Fourteenth Amendment)

68. Plaintiff realleges all preceding paragraphs.

69. Defendant Chairman George Chiu was at all relevant times aware, or in the exercise of reasonable oversight should have been aware, that the President routinely and systematically manipulated official agency travel itineraries and staff assignments to ensure that younger, attractive female subordinates were designated as his primary travel companions.

70. These assignments were frequently made without any legitimate business necessity or professional justification; indeed, Defendant Chairman knew that more qualified subject-matter experts and senior personnel were regularly displaced or barred from travel to facilitate the President's preference for the company of specifically selected female staff.

71. Upon information and belief, this predatory pattern of 'travel grooming' extended beyond official agency business to include trips that were entirely unrelated to the organization's mission, yet were sanctioned or funded by the agency, during which younger women, including the Plaintiff, were again assigned to accompany the President.

72. Despite having the authority and the duty to intervene, Defendant Chairman consciously disregarded the clear signs of the President's predatory predilections and the misuse of public resources. By turning a blind eye to these recurring travel irregularities and the displacement of qualified personnel,

17

Defendant Chairman acted with deliberate indifference to the constitutional rights of agency employees and the creation of a hostile work environment, effectively ratifying the President's conduct as the unofficial custom and practice of the organization.

73. Upon information and belief, despite receiving credible reports of the President's predatory predilections, Defendant Chairman failed to initiate an independent investigation, effectively granting the President 'de facto' immunity for his actions.

74. In June of 2024, the President and GVB marketing manager, Mark Manglona, were scheduled to go to Saipan for a work-related trip.

75. Plaintiff was not scheduled for that trip.

76. The Board of Directors, including Defendant Chiu, reviewed the travel for the President, and, upon information and belief, Defendant Chiu knew that only the President and the marketing manager were scheduled to attend this trip to Saipan.

77. At the last minute, the President ordered Plaintiff to attend this trip to Saipan.

78. GVB purchased rooms at the Surfrider Resort Hotel for the President and Mark Manglona.

79. There were no more rooms available for Plaintiff at the Surfrider Resort Hotel originally booked by GVB.

80. The President also wanted Plaintiff to stay at the same hotel as him in Saipan.

81. To accomplish this, the President called Willie Tan on the phone.

82. Willie Tan owns, at least in part, Tan Holdings Corporation, which owns the Crowne Plaza Resort Saipan.

83. After speaking with Willie Tan, the President informed Plaintiff that he found a room at the Crowne Plaza Resort Saipan.

84. The President then took everyone to the Crowne Plaza Resort Saipan.

85. Once at the Crowne Plaza Resort Saipan, the President obtained his room key, and informed Plaintiff that he also had a room at the Crowne Plaza Resort Saipan..

86. Chairman Chiu is the Executive Vice President of Tan Holdings Corporation.

87. Upon information and belief, Chairman Chiu knew that both the President and Plaintiff were staying at the Crowne Plaza Resort Saipan, the hotel not approved nor purchased by GVB for this official work trip.

88. Chairman Chiu was also in Saipan during this trip.

89. Chairman Chiu saw Plaintiff, President, and Mark Manglona in Saipan during this trip at a Japanese restaurant in the Crowne Plaza Resort Saipan.

90. Chairman Chiu should have questioned why Plaintiff was there and why she was staying at the same hotel as President.

91. Chairman Chiu should have recognized that the President was engaging in his predatory predilections again and likely subjecting Plaintiff to sexual harassment.

92. Knowing that the President intentionally chose a hotel away from the hotel chosen by GVB, Chairman Chiu ignored the substantial risks of harm to Plaintiff and failed to take remedial action.

93. Chairman Chiu, who has authority and control over the Crowne Plaza Resort Saipan, should have also investigated what was occurring at that hotel.

94. By intentionally refusing to do so and allowing the President to stay elsewhere from the authorized GVB hotel and to have Plaintiff stay at the Crowne Plaza Hotel, Chairman Chiu perpetuated a dangerous condition that led to Plaintiff being sexually harassed.

95. Knowledge of these circumstances combined with the President's behavior establishes that Chairman Chiu was reckless and callously and deliberately indifferent to Plaintiff's rights and did nothing to stop the President from harming Plaintiff.

96. Chairman Chiu should have refused the President and ordered he return to the other hotel and not have Plaintiff stay with him away from the sanctioned GVB hotel.

97. Instead, Chairman Chiu allowed it to happen despite knowing the President's known predilections.

98. Defendant Chairman maintained a board structure and policy that intentionally isolated the President from standard oversight, preventing employees from reporting misconduct directly to the Board of Directors.

99. Defendant Chairman's failure to act in the face of a known and substantial risk of sexual assault/harassment was not the result of mere oversight, but a conscious and deliberate choice to prioritize the President's tenure over the safety of the agency's employees.

100. The Chairman's deliberate indifference was a moving force behind the Plaintiff's injuries during the June 2024 trip, as the President was emboldened to continue his predatory behavior by the knowledge that the Board, through the Chairman, would not intervene.

101. Complete inaction in the face of claimed harassment cannot be objectively reasonable conduct entitling a supervisor to qualified immunity

102. At all relevant times, Chairman Chiu was acting under color of law.

103. Chairman Chiu's involvement was the proximate cause of Plaintiff's injuries.

104. Chairman Chiu's involvement in this deprivation of Plaintiff's constitutional rights has caused her to suffer damages in an amount to be determined at trial, but in no event less than $20,000,000.00.

//



//

## COUNT THREE: 42 U.S.C. § 1983 —
## CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS
### (Against Defendant George Chiu in his Individual Capacity)

105.   Plaintiff realleges all preceding paragraphs.

106.   42 U.S.C. § 1983 creates a cause of action against any person who, acting under color of state or territorial law, conspires with others to deprive any person of rights secured by the Constitution and laws of the United States. *Crowe v. County of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010); *Mendocino Environmental Center v. Mendocino County*, 192 F.3d 1283, 1301 (9th Cir. 1999).

107.   To establish a § 1983 conspiracy claim, a plaintiff must show: (1) an agreement or meeting of the minds between two or more persons; (2) the agreement was to deprive the plaintiff of rights protected by the Constitution; (3) an actual deprivation of those rights occurred; and (4) the conspirators acted under color of state or territorial law.

108.   At all relevant times, Defendant Chiu acted under color of territorial law by virtue of his position as Chairman of the Board of Directors of GVB. Carl T.C. Gutierrez likewise acted under color of territorial law by virtue of his position as President and General Manager of GVB.

109.   Defendant Chiu and Mr. Gutierrez reached an agreement or meeting of the minds, express or tacit, to facilitate, protect or allow Mr. Gutierrez's predatory conduct toward Plaintiff and other junior female subordinates. The agreement is established by, among other facts:

110. (a) Chiu's actual or constructive knowledge of Mr. Gutierrez's predatory pattern, derived from informal complaints, internal Board discussions, observable conduct on official agency travel, reputational knowledge, and the findings of the third-party investigation engaged by GVB;

111. (b) Chiu's deliberate choice not to investigate or intervene in Mr. Gutierrez's known conduct, despite his authority and duty as Board Chairman to do so;

112. (c) Chiu's affirmative facilitation of the June 2024 Saipan hotel arrangement, including by leveraging his concurrent position as Executive Vice President of Tan Holdings Corporation, owner of the Crowne Plaza Resort Saipan, to provide Mr. Gutierrez with lodging separate from the GVB-approved hotel and proximate to Plaintiff's room;

113. (d) Chiu's personal presence at the Crowne Plaza Resort Saipan during the June 2024 trip, including his observation of Plaintiff in Mr. Gutierrez's company at the hotel restaurant, without taking any corrective action; and

114. (e) Chiu's maintenance of a Board governance structure that intentionally isolated the President and General Manager from standard oversight and that prevented employees from reporting misconduct directly to the Board.

115. The object of the conspiracy was to deprive Plaintiff of her right under the Equal Protection Clause of the Fourteenth Amendment to be free from intentional, gender-based discrimination and harassment by a state actor, and to insulate Mr. Gutierrez from accountability for that conduct.

116. The conspiracy resulted in actual deprivations of Plaintiff's constitutional rights, including but not limited to the June 4–6, 2024 sexual assault at the Crowne Plaza Resort Saipan and the subsequent retaliation, exclusion from meetings, increased scrutiny, denial of EEO support, and pressure to accept a demoted position described in paragraphs above.

117. As a direct and proximate result of the conspiracy, Plaintiff has suffered, and continues to suffer, severe emotional distress, anxiety, post-traumatic stress disorder, loss of enjoyment of her employment, lost wages and benefits, future medical and therapeutic expenses, and other compensatory damages.

118. Plaintiff is entitled to compensatory damages, punitive damages against Chiu in his individual capacity, costs, and reasonable attorney's fees under 42 U.S.C. § 1988, in an amount to be proven at trial but in no event less than $20,000,000.00.

### COUNT FOUR: NEGLIGENT SUPERVISION
**(Guam Common Law)**

119. Plaintiff realleges all preceding paragraphs.

120. GVB through its Board, owed a duty of reasonable care to supervise and control the workplace conduct of its President and General Manager, including by implementing harassment prevention training, effective reporting mechanisms, and prompt investigation and corrective action GVB breached its duty by failing to exercise reasonable supervision and control and by failing to implement basic safeguards, including lack of effective Board oversight and checks, failure to implement and communicate reporting mechanisms and timely resolution procedures, failure to provide annual harassment prevention and EEO training,

24

absence of qualified HR support, discouragement of reporting, and failure to take prompt corrective action

121. The Board reviewed the final investigative report on January 3, 2025, yet no timely corrective communication or discipline followed, and Plaintiff did not receive results until more than three months later.

122. Out of an abundance of caution and without conceding that GVB is an instrumentality of the Government of Guam, Plaintiff has filed a notice with the Government of Guam pursuant to the Government Claims Act and will submit any response to the Court once it is received. Plaintiff maintains the position that GVB is a separate public corporation that is not an arm of the Government of Guam.

123. As a result of Defendant's negligence, Plaintiff has suffered damages in an amount to be determined at trial, but in no event less than $500,000.00.

## COUNT FIVE: NEGLIGENT TRAINING
### (Guam Common Law; Public Policy)

124. Plaintiff realleges all preceding paragraphs.

125. GVB owed a duty to reasonably train executives, managers, and staff on harassment prohibitions, workplace boundaries, reporting mechanisms, and consequences for violations, but failed to provide adequate training, including failing to conduct required annual harassment-prevention training during the relevant period, leaving Plaintiff and colleagues untrained, lacking support systems and trained HR staff, and discouraging escalation by telling Plaintiff the Board would "sweep it under the rug".

126. The absence of functioning EEOC training and protocols created a foreseeable and unreasonable risk of unlawful harassment and delayed reporting, which materialized here, and GVB's negligent training was a substantial factor in causing Plaintiff's injuries.

127. Out of an abundance of caution and without conceding that GVB is an instrumentality of the Government of Guam, Plaintiff has filed a notice with the Government of Guam pursuant to the Government Claims Act and will submit any response to the Court once it is received. Plaintiff maintains the position that GVB is a separate public corporation that is not an arm of the Government of Guam.

128. As a result of Defendant's negligence, Plaintiff has suffered damages in an amount to be determined at trial, but in no event less than $500,000.00.

### COUNT SIX: NEGLIGENT HIRING AND RETENTION
### (Guam Common Law)

129. Plaintiff realleges all preceding paragraphs.

130. Defendant hired Carl T.C. Gutierrez as President and General Manager, placing him in authority over employees, including Plaintiff, and retained him despite warning signs and red flags indicating unfitness, including reports of unwanted sexual advances and abuse of authority and observations of behavior inconsistent with workplace standards.

131. GVB's lack of effective reporting mechanisms prevented receipt of information it otherwise would have obtained, creating a foreseeable risk of harm to employees.

26

132.	As a direct and proximate result of negligent hiring and retention, Plaintiff suffered repeated harassment and assault, emotional distress including anxiety and PTSD symptoms.

133.	Out of an abundance of caution and without conceding that GVB is an instrumentality of the Government of Guam, Plaintiff has filed a notice with the Government of Guam pursuant to the Government Claims Act and will submit any response to the Court once it is received. Plaintiff maintains the position that GVB is a separate public corporation that is not an arm of the Government of Guam.

134.	As a result of Defendant's negligence, Plaintiff has suffered damages in an amount to be determined at trial, but in no event less than $500,000.00.

## PRAYER FOR RELIEF

1.	For Count One, enter judgment in favor of Plaintiff in the amount of not less than $20,000,000.00;

2.	For Count Two, enter judgment in favor of Plaintiff in the amount of not less than $20,000,000.00;

3.	For Count Three, enter judgment in favor of Plaintiff in the amount of not less than $20,000,000.00;

4.	For Count Four, enter judgment in favor of Plaintiff in the amount of not less than $500,000.00;

5.	For Count Five, enter judgment in favor of Plaintiff in the amount of not less than $500,000.00;

6. For Count Six, enter judgment in favor of Plaintiff in the amount of not less than $500,000.00;

7. Enjoin Defendant Guam Visitors Bureau from engaging in further acts of sexual harassment, retaliation, or discrimination against Plaintiff or any other employee, and require Defendant to implement and maintain effective anti-harassment policies, annual training, and reporting mechanisms consistent with federal law;

8. Award costs to bring this action;

9. Award interest for pre- and post-judgment interest as allowed by law;

10. Award attorney's fees pursuant to 42 USC § 1988; and

11. Award such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial in the above entitled action.

Respectfully submitted on June 1, 2026.

**RAZZANO WALSH & TORRES, P.C.**

By: _/s/Joseph C. Razzano_

**JOSEPH C. RAZZANO**
**JOSHUA D. WALSH**
*Attorneys for Plaintiff*
*Jane Doe*

28