EXHIBIT N

Joseph B. McDonald
McDonald Law Office LLC
Ada Plaza Center, Building A
173 Aspinall Avenue, Suite 207A
*Hagåtña*, Guam 96910
Tel: (671) 588-8866
www.guam@mcdonald.law

Attorneys for Defendant Guam Visitors Bureau

IN THE UNITED STATES DISTRICT COURT OF GUAM

| | |
|---|---|
| JANE DOE,<br><br>Plaintiff,<br><br>vs.<br><br>GUAM VISITORS BUREAU, a Guam public corporation, and GEORGE CHIU, in his individual capacity as Chairman of the Bord of Directors of the Board of the Guam Visitors Bureau,<br><br>Defendants. | No. 1:26-cv-00017<br><br>DEFENDANT GUAM VISITORS BUREAU'S MOTION TO DISMISS (Fed. R. Civ. P. 10(a); 12(b)(1), (5) and (6); 41(b)) |

**DEFENDANT GUAM VISITORS BUREAU'S MOTION TO DISMISS**

PLEASE TAKE NOTICE that defendant Guam Visitors Bureau ("GVB") moves to dismiss this action the following grounds a) the Complaint fails to state a claim upon which relief can be granted; b) lack of subject matter jurisdiction; c) improper service; and d) Plaintiff failed to disclose her identity in violation of Rule 10 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 10(a), 12(b)(1), (5) and (6).

GVB further requests the Court dismiss the matter with prejudice pursuant to Rule 41(b) of the Federal Rules of Civil Procedure because permitting amendment would be futile.

EXHIBIT N

## INTRODUCTION

For all her salacious allegations, Jane Doe ("DOE") fails to advance meritorious causes of action. As to her purported § 1983 claims, DOE alleges GVB is a government agency acting under color of law to come within the purview of the statute, while also alleging GVB is not a government agency. Either way, her claims fail: the Supreme Court has held § 1983 does not apply to Guam governmental agencies, *see Ngiraingas v. Sanchez,* 495 U.S. 182, 192 (1990), and § 1983 does not apply to non-governmental agencies. DOE further has not and cannot demonstrate GVB was acting under color of law. As to her claims brought under Guam law, there is no subject matter jurisdiction: DOE failed to comply with the Government Claims Act and Guam statute as to service, and there is neither federal question nor diversity jurisdiction for such claims. DOE's belated request for injunctive relief also must fail as DOE waited years to report her alleged harm, and the alleged perpetrator left GVB long ago. Finally, DOE cannot disobey the Federal Rules of Civil Procedure and proceed anonymously. Dismissal is therefore required.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

DOE filed her Complaint in this matter on June 1, 2026. ECF 1. ("Compl.") As alleged in the Complaint, DOE was employed as an Executive Assistant to the President & CEO and Board Secretary in or about July 15, 2019. Compl. ¶ 11. Sometime in 2020, Mr. Carl Gutierrez became President and General Manager of GVB, and was DOE's direct supervisor. Compl.¶ 12.

DOE claims Mr. Gutierrez sexually harassed her on the following dates: October 30, 2022, November 19-22, 2022, October 23-20, 2023, June 4-6, 2024, August 20, 2024, and generally between October 2022 and August 2024. Compl. ¶¶ 13-18.

[1] The facts as alleged are based on the materials produced to date. GVB does not admit the veracity of the allegations and reserves the right to amend the factual recitation should additional material be discovered.

DOE admits she delayed reporting these alleged instances of misconduct until August 22, 2024 when she verbally advised GVB's Legal Counsel. Compl. ¶¶ 22-23. DOE submitted an official written complaint to Board Chairman George Chiu on or about November 14, 2024 regarding the incidents alleged to have occurred between October 2022 and August 2024. Compl. ¶ 24. GVB acknowledged receipt on November 20, 2024 and began an investigation. Compl. ¶¶ 25-28. Mr. Gutierrez resigned sometime prior to December 14, 2024. Compl. ¶ 27.

DOE alleges GVB is an autonomous public corporation organized under the laws of Guam that is neither an arm nor an instrumentality of the Government of Guam. Compl. ¶¶ 4-9, 45.

As to Counts Four (Negligent Supervision), Five (Negligent Training), and Six (Negligent Hiring and Retention), DOE asserts she filed a notice with the Government of Guam pursuant to the Government Claims Act. Compl. ¶¶122, 127, and 133. She submitted her claim on June 2, 2026. *See* Exh. A.

## ARGUMENT

### I. THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED UNDER RULE 12(b)(6)

#### A. <u>Legal Standard</u>

Dismissal is required under Rule 12(b)(6) where, as here, a complaint fails to state a cognizable legal theory or alleges insufficient facts under a cognizable legal theory. *Somers v. Apple, Inc.,* 729 F.3d 953, 959 (9th Cir. 2013); *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990).

Rule 8 requires a claim for relief include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P 8(a)(2). Rule 8 "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true,

to state a claim to relief that is *plausible*, not merely possible, on its face. *Id.* at 678-79 (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)) (internal quotation marks omitted); *Perez v. Dep't of Corrections*, Civil Case No. CV13-0013, slip op., 2014 WL 4467071 *8 (D. Guam Sept. 10, 2014). Well-pleaded facts, distinguished from conclusory allegations, are taken as true. *Swanson v. Bixler,* 750 F.2d 810, 813 (10th Cir. 1984); *Iqbal,* 556 U.S. at 681. Conclusory statements and labels are insufficient; the complaint must contain direct or inferential allegations concerning all elements necessary to sustain recovery under some viable legal theory. *Twombly,* 550 U.S. at 555, 557, 562. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do" … Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Iqbal,* 556 U.S. at 677-78 (citations omitted). *Iqbal* makes clear that a complaint must contain allegations of some substance: "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. Accordingly, "the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Svc.,* 572 F.3d 962, 969 (9th Cir. 2009). As determined by the Supreme Court,

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged … The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully … Where a complaint pleads fact that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal,* 556 U.S. at 678. The Supreme Court further explained the two principles underlying the approach articulated in *Twombly*: First, though a court accepts as true all allegations contained in a complaint, this is inapplicable to legal conclusions; a court does not accept as true a legal conclusion couched as a factual allegation. *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 555). Second, only a complaint stating a *plausible* claim for relief survives a motion to dismiss;

where "well-pleaded" facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has not shown the pleader is entitled to relief. *Iqbal,* 556 U.S. at 679 (citing FRCP 8(a)(2)).

B. <u>Count One must be dismissed because GVB is not a "person" from whom recovery may be sought under § 1983.</u>

To state a colorable claim, DOE must allege 1) a right secured by the Constitution or laws of the United States was violated, and 2) the alleged violation was committed by a "person" acting under color of State law. *Long v. Count of Los Angeles,* 442 F.3d 1178, 1185 (9th Cir. 2006). Here, DOE asserts that GVB is not an instrumentality of the Government of Guam while at the same time alleging GVB is a government agency. Either way, DOE's § 1983 claim against GVB must be dismissed.

1. <u>§ 1983 does not apply to GVB.</u>

In *Ngiraingas v. Sanchez*, the United States Supreme Court expressly held that neither the Territory of Guam nor its officers acting in their official capacities are "persons" subject to liability under § 1983. *Ngiraingas v. Sanchez*, 495 U.S. 182, 192 (1990). There, petitioners brought suit under § 1983 against the Government of Guam, the Guam Police Department, the Director of the Police Department in her official capacity and various police officers in their official and individual capacities. *Id.* at 184. The trial court dismissed the claims against the Government of Guam, the police department, and individual police officers in their official capacities; petitioners appealed. *Id.* at 185. On appeal, the Ninth Circuit held the Government of Guam and the Police Department were no more than federal instrumentalities and thus not "persons" within the meaning of § 1983. Both the trial and appellate courts found suit against the individual defendants in their official capacities improper because a judgment against them in their official capacities would affect the public treasury and the suit essentially would be one against the government itself. *Id.* at 185. The Supreme Court examined the statute's language

and purpose to determine whether Guam constitutes a "person" under § 1983, finding Congress never intended to subject the Territories to liability under the statute. *Id.* at 186, 188-89.

Subsequently, the Ninth Circuit interpreted *Ngiraingas* as allowing officials sued in their official capacities for prospective relief, but not money damages, to be considered "persons" under § 1983. *Paeste v. Government of Guam,* 798 F.3d 1228, 1237 (9th Cir. 2015). *Paeste* noted that the Ninth Circuit's decision in *Ngiraingas* was based on Guam's status as nothing more than an instrumentality of the federal government but the *Paeste* court indicated that argument was rejected by the Supreme Court. *Id.* at 1237.

Regardless, DOE's attempt to apply *Monell* liability to GVB via § 1983 is unavailing. *Monell* addressed the potential liability of local governments for violations of § 1983. *Monell v. Department of Social Services of City of New York,* 436 U.S. 658 (1978). The assertion here fails for two main reasons. First, the analysis of *Monell* as pertaining to the history of adding "municipal corporations" to § 1983, *id.* at 688-690, is directly contradicted by *Ngiraingas* which made clear, "Persons acting under color of law of any Territory were not included." *Ngiraingas,* 495 U.S. at 188-89. A principal fallacy of DOE's assertion is that for purposes of *Monell,* Guam is treated as a municipality or a local government; however, Guam is an instrumentality of the federal government. *See, e.g., Commonwealth of Puerto Rico v. Sanchez Valle,* 579 U.S. 59, 74, 78 (2016) (Guam and federal government are not separate sovereigns for purposes of double jeopardy); *Sakamoto v. Duty free Shoppers, Ltd.,* 764 F.2d 1285 (1985) (Commerce Clause inapplicable to Guam because Guam is not a state but an instrumentality of the federal government). Accordingly, for purposes of *Monell* liability, Guam and its agencies acting in their official capacities are treated like a State rather than a "local government" as in a State, for purposes of § 1983. *See Tobal v. Virgin Islands Police Dep't,* No. 2010 0062, 2022 WL 136841 at *12 (D.V.I. Jan. 13, 2022).

To the extent DOE alleges GVB is a governmental agency, *Ngiraingas* makes clear § 1983

never was intended to apply to the Government of Guam and its agencies. To the extent DOE alleges GVB is not a governmental agency, *see* Compl. ¶¶ 4-9, § 1983 does not apply to non-state actors except in very limited circumstances, none of which is present here.

2. <u>GVB was not acting under "color of state law".</u>

A private organization's action may be treated as the government's action if, and only if, there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself. *Brentwood Academy v. Tenn. Secondary Sch. Athletic Ass'n.,* 531 U.S. 288, 295 (2001). Thus, even assuming *arguendo* GVB is a "person", the Complaint fails to establish GVB was acting under color of state law. A person acts under color of state law when exercising power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Paeste, supra,* 798 F.3d at 1238 (cleaned up). A public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law. *Id.* (cleaned up). Private action may be treated as that of the state where the government compelled the action using its "coercive power" or provided significant encouragement for the action; 2) the government and the actor willfully participated in the joint activity; 3) the government controlled a nominally private actor, or 4) the government delegated a "public function" to the private actor. *Single Moms, Inc. v. Montana Power Co.,* 331 F.3d 743, 747 (9th Cir. 2003).

Here, it is well established legally and factually that GVB is not an instrumentality of the Government of Guam. GVB's status was discussed in *Bordallo v. Reyes*. There, the court noted that, "Guam's public corporations cannot be categorized as public corporations in the true sense of municipal corporations". *Bordallo v. Reyes,* 610 F. Supp. 1128, 1135 (D. Guam 1984). Finding GVB was governed in accordance with the applicable general corporation laws of Guam, the court found GVB was not an instrumentality of the Executive Branch of the Government of Guam, and that GVB ***does not perform any governmental function***. *Id.* at 1135-37. In *Laguana*

*v. Guam Visitors Bureau,* the Ninth Circuit held that not only was GVB established as a separate organization that was not a public entity, the plaintiff was not a public employee entitled to protection from patronage dismissals. *Laguana v. Guam Visitors Bureau,* 725 F.2d 519, 521 (9th Cir. 1984).

DOE's Complaint recognizes GVB is not an instrumentality of the Government of Guam; DOE alleges that GVB is a public corporation organized under the laws of Guam. Compl. ¶ 4; *see also* 12 GCA § 9102. DOE alleges GVB has an independent Board of Directors that exercises independent policymaking authority over GVB's operations and personnel; the Governor does not exclusively appoint or remove GVB's Board members. Compl. ¶ 7. Board members are chosen from various constituencies; the Government does not have exclusive control over the board. 9 GA § 9106(a). GVB has purposes consistent with promoting tourism and cultural activities. 12 GCA § 9104. GVB's functions are not core sovereign functions of the Government of Guam and GVB maintains its own revenue sources. Compl. ¶¶ 6, 8. GVB receives some funding from the Government of Guam, but it is appropriated in the form of grants in aid. 12 GCA § 9113(b).

Based on the foregoing, it cannot be said GVB's actions bears any characteristics fairly attributable to the Government of Guam, particularly as GVB does not perform any governmental functions. DOE has not and cannot allege that the Government of Guam exercised "coercive power" or provided "significant encouragement" to GVB concerning the conduct DOE alleges. The government does not control GVB; GVB has a separate Board of Directors that exercises policymaking and oversight of the agency. Even regulation of a private entity does not transform the private entity's conduct into state action. *Single Moms, supra,* 331 F.3d at 748. But regardless, there is not now and will not be any showing that the government has "so far insinuated itself into a position of interdependence" with GVB that it must be recognized as a joint participant in the challenged activity." *Kirtley v. Rainey,* 326 F.3d 1088, 1093 (9th Cir.

2003) (cleaned up). Finally, the Complaint does not articulate facts to support an allegation that there is "such a close nexus between the State and the challenged action that the seemingly private behavior may be fairly treated as that of the State itself." *Brentwood, supra,* 531 U.S at 295.

Based on the foregoing, whatever it is that GVB is alleged to have done, it cannot be said GVB was operating under color of State law and Count One must therefore be dismissed.

C. DOE's belated request renders the Court unable to grant effective injunctive relief against GVB or Mr. Gutierrez as Mr. Gutierrez resigned.

Article III case or controversy requirement demands "a definite and concrete controversy involving adverse legal interests at every stage in the litigation." *Gray v. City of Valley Park, Mo.,* 567 F.3d 976, 983 (8th Cir. 2009) (citation and internal quotation marks omitted); *accord Arizonans for Official English f. Arizoa,* 520 U.S. 43, 67 (1997) ("[A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed."). "When, during the course of litigation, the issues presented in a case 'lose their life because of the passage of time or a change in circumstances ... and a federal court can no longer grant effective relief,' the case is considered moot." *Haden v. Pelofsky,* 212 F.3d 466, 469 (8th Cir. 2000) (cleaned up). Injunctive relief deals primarily not with past violations but with threatened future ones. *Cf. Swift & Co. v. United States,* 276 U.S. 311, 315 (1928) (addressing suit for injunction). A case will be considered moot where there is no reasonable expectation that the wrong alleged here will be repeated. *See United States v. Aluminum Co. of Am.,* 148 F.2d 416, 448 (2d Cir. 1945) (discussing injunction for violation of antitrust laws).

Such is the case here concerning GVB and Mr. Gutierrez. DOE's complaint is focused on actions allegedly taken by Mr. Gutierrez; however, DOE admits that she delayed reporting her experiences for years, and that Mr. Gutierrez resigned shortly after she made a written complaint to Mr. Chiu. GVB is no longer in a position to address any actions supposedly taken by Mr.

Gutierrez. Accordingly, any claims seeking injunctive relief should be dismissed as moot.

D. DOE's § 1983 claim against GVB based on discrete acts from 2022 and 2023 is barred by the statute of limitations.

A claim may be dismissed because it is barred by the statute of limitations when the running of the statute is apparent on the face of the complaint. *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006). The statute of limitations for DOE's § 1983 count is governed by Guam law because § 1983 does not have its own statute of limitations. *See* 42 U.S.C. § 1988 (forum state's law applies where federal statute is "deficient"). Guam's personal injury statute of limitations therefore applies. *Douglas v. Noelle,* 567 F.3d 1103, 1109 (9th Cir. 2009) (characterizing section 1983 claims as personal injury suits for statute of limitations purposes). That limitations period is two years. 7 GCA § 11306(a). Federal courts apply federal law when determining the accrual date for statute of limitations § 1983 claims. *Quitugua v. Quitugua,* No. 25-cv-00036, 2025 WL 3465516 at *4 (D. Guam Dec. 3, 2025). "The general rule is 'that a cause of action accrues when the plaintiff knows or has reason to know of the injury that is the basis of the action and the cause of that injury.'" *Id.* (cleaned up). Discrete acts are not actionable if time barred. *National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 113 (2002). DOE alleges all acts were a continuing course of conduct but also alleges each were discrete acts each with their own statute of limitations period. To the extent she pursues liability based on discrete acts occurring in 2022 and 2023, all such discrete acts are time barred.

**II. COUNTS FOUR, FIVE, AND SIX MUST BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION PURSUANT TO FRCP 12(b)(1)**

A. Legal Standard

Federal courts have limited jurisdiction; it is presumed a cause lies outside this limited jurisdiction. *Lau v. Dep't of Ed. For Government of Guam,* Civil Case No. 10-00035, slip op., 2013 WL 1217764 *4 (D. Guam Mar. 21, 2013) (citing *Kokkonen v. Guardian life. Ins. of Am.*,

511 U.S. 375, 377 (1994)). A federal court's jurisdiction is strictly construed. *Lowdermilk v. U.S. Bank Nat'l Assoc.,* 479 F.3d 994, 998 (9th Cir. 2007), *overruled on other grounds in Rodriguez v. AT&T Mobility Svcs. LLC,* 728 F.3d 975, 976 (2013). Consequently, jurisdiction cannot be manufactured where none exists. *Cf. United States v. Sherwood,* 312 U.S. 584, 590 (1941) (federal rules of procedure cannot enlarge jurisdiction). Moreover, the court has no authority to create equitable exceptions to jurisdictional requirements. *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 818 (1988); s*ee also Bowles v. Russell,* 551 U.S. 205, 214 (2007) ("excusable neglect" insufficient to overcome jurisdictional requirement of timely filing of notice of appeal). Questions of jurisdiction must be resolved prior to addressing issue of law. *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 93-102 (1998) (rejecting doctrine of "hypothetical jurisdiction" which would allow court to rule of issues of law before adjudicating jurisdiction).

DOE bears the burden of proving subject matter jurisdiction. *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996). She has not and cannot do so; the case must be dismissed against GVB.

Jurisdictional attacks under Rule 12(b)(1) may be facial or factual; a facial attack relies on the face of the complaint while a factual attack challenges the truth of the allegations in the complaint giving rise to federal jurisdiction. *See generally Simanov v. Kamalen Karidat,* No. Civ. 19-00143, 2020 WL 5807956 at *3 (D. Guam Sept. 29, 2020) and citations therein (discussing jurisdictional attacks under 12(b)(1)). In a facial attack, the court considers the complaint's allegations to be true. *Id.* (citing *Doe v. Schachter,* 804 F. Supp. 53, 56 (N.D. Cal. 1992)). A factual attack challenges the truth of the allegations in the complaint giving rise to federal jurisdiction and the court does not presume those allegations to be true. *Id.* (citing *Thornhill Pub. Co. v. Gen'l Tel. & Elecs. Corp.,* 594 F.2d 730, 733 (9th Cir. 1979). When ruling on such a motion, the court is not restricted to the fact of the pleadings but may review any

evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction. *Id.* (citing *McCarthy v. United States,* 850 F.2d 558, 560 (9th Cir. 1988)).

B. <u>DOE failed to comply with the Government Claims Act and therefore there is no subject matter jurisdiction over Counts Four, Five, and Six.</u>

The Government Claims Act applies to claims made against GVB, including Counts Four, Five, and Six as asserted by DOE here under local Guam law. *See* 5 GCA §§ 6102, 6103(a). DOE admits she did not exhaust her administrative remedies. Compl. ¶¶ 122, 127, 133. Though DOE neglects to allege when she submitted her claim, it appears the claim was submitted on June 2, 2026. Regardless, DOE failed to comply with the Act's requirements, which divest this Court of subject matter jurisdiction as to Counts Four, Five, and Six.

A claimant must satisfy the specific administrative prerequisites set forth in Guam's Government Claims Act before being entitled to file suit against the Government or any agency thereof – autonomous or non-autonomous. *Guam Police Dep't v. Superior Court of Guam,* 2011 Guam 8 ¶ 31; *Perez v. Guam Housing & Urban Renewal Auth. (GHURA),* 2000 Guam 33 ¶ 14. The Government Claims Act requires claims to be filed within eighteen months from the date the claim arose. 5 GCA § 6106(a). Statutes of limitation are jurisdictional in nature and may not be waived. *Pacific Rock Corp. v. Dep't of Ed.,* 2001 Guam 21 ¶ 18 (cleaned up). Where a party fails to file a timely administrative claim, and thus has failed to comply with the Government Claims Act, the court does not have jurisdiction to proceed and cannot entertain the suit. *Guam Police Dep't,* 2011 Guam 8 ¶ 32.

The latest event which DOE alleges caused her injury occurred on August 20, 2024. Accordingly, DOE was required to submit her claim within eighteen months of August 20, 2024, or by February 20, 2026. She failed to do so, and therefore Counts Four, Five, and Six are barred.

Even if the Court finds DOE somehow complied with the statute of limitations, DOE still

failed to comply with the law by filing her suit prior to the determination by the Claims Officer. The Government Claims Act bars a party from filing suit against either the Government of Guam or the specific agency involved unless the claimant has been notified by registered or certified mail, return receipt requested, that his claim has been rejected in whole or in part. 5 GCA § 6208(a). DOE did not file her government claim timely and did not wait the six months for the Claims Officer to investigate the claim, in violation of the statute. *See e.g. Pacific Rock Corp. v. Dep't of Ed.,* 2001 Guam 21 ¶ 52 (limiting holding to breach of contract cases for procurement contracts).

Because DOE failed to comply with the requirements of the Government Claims Act, there is no subject matter jurisdiction for Counts Four, Five, and Six, and therefore they must be dismissed with prejudice.

C. <u>There is no federal question or diversity jurisdiction over Charges 4, 5, or 6.</u>

In order for this Court to have subject matter jurisdiction over Counts Four, Five, and Six, DOE must demonstrate there exists either federal question jurisdiction or diversity jurisdiction. 28 U.S.C. §§ 1331, 1332. To the contrary, DOE's allegations establish this Court lacks subject matter jurisdiction over these remaining claims.

Federal question jurisdiction exists where a well-pleaded complaint "establishes either that federal law creates the cause of action or that plaintiff's right to proceed necessarily depends on resolution of a substantial question of federal law. *Franchise Tax Bd. v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 27-28 (1983). DOE's claims of negligent supervision, negligent training, and negligent hiring and retention do not arise from federal law or depend on resolution of any federal law.[2] Accordingly, there is no federal question jurisdiction as pertaining to GVB.

The Court also lacks subject matter jurisdiction because there is no complete diversity

[2] As discussed previously, Counts Four, Five, and Six are subject to Guam's Government Claims Act, not federal law. 5 GCA §§ 6102, 6105.

jurisdiction. Federal courts have subject matter jurisdiction on the basis of "diversity jurisdiction" where the matter in controversy exceeds the sum or value of $75,000 *and* is between citizens of different states. 28 U.S.C. § 1332(a)(1). Diversity jurisdiction requires "complete diversity" which requires that no plaintiff be a citizen of the same state as any defendant. *See Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267 (1806); 28 U.S.C. § 1332(a); *cf. Matheson v. Progressive Specialty Ins. Co.,* 319 F.3d 1089, 1090 (9th Cir. 2003) (discussing requirement of complete diversity in context of removal to federal court); *Lujan v. Girardi & Keese,* No. Civ. 09-0017, slip op., 2009 WL 52316906 at *3 (D. Guam Dec. 29, 2009) (same; noting 9th Circuit requires complete diversity jurisdiction). The requirement is "strict and unequivocal" and must be apparent from the pleadings. *See Neat-N-Tidy Co., Inc. v. Tradepower (Holdings) Ltd.,* 777 F. Supp. 1153, 1156 (S.D.N.Y. 1991) (cleaned up). GVB maintains DOE is not entitled to any financial recovery from the GVB for the reasons set forth in this motion. Also relevant, DOE and Defendant Chiu are residents of Guam and GVB is a corporation organized under the laws of Guam. Compl. ¶¶ 3, 4, 10. There is no diversity jurisdiction.

Accordingly, Counts Four, Five, and Six must be dismissed.

## III. DISMISSAL IS REQUIRED DUE TO INSUFFICIENT SERVICE OF PROCESS IN VIOLATION OF FRCP 12(b)(5)

To effectuate proper service on the Government of Guam, its agencies and corporations, the Federal Rules of Civil Procedure require DOE to either deliver a copy of the summons and complaint to the Government of Guam's chief executive officer, or serve a copy of each in the manner prescribed by Guam's law for serving a summons or like process on the government. Fed. R. Civ. P. 4(i)(2). Guam law requires the summons and complaint to be served on the Attorney General or other specified individuals. G.R.C.P. 4(i)(1)(A). Service of process is a jurisdictional requirement. DOE failed to comply with the requirements of the Guam statute specifying the manner in which the Government of Guam and its agencies and corporations are to

be served. Once the sufficiency of service of process is challenged, the plaintiff has the burden of proving proper service. *See, e.g., Rivera–López v. Municipality of Dorado,* 979 F.2d 885, 887 (1st Cir. 1992).

As DOE cannot meet this burden, the Complaint must be dismissed.

## IV. DISMISSSAL IS REQUIRED BASED ON DOE'S FAILURE TO DISCLOSE HER IDENTITY

Rule 10(a) of the Federal Rules of Civil Procedure requires DOE to use her full name and true identity in her Complaint, not a pseudonym. Fed. R. Civ. P. 10(a). The rule reflects the "paramount importance of open courts" such that the "default presumption is that the plaintiffs will use their true names." *Doe v. Kamehameha Sch./Bernice Pauahi Bishop Estate,* 596 F.3d 1036, 1046 (9th Cir. 2010), *cert. denied sub nom. Doe ex rel Doe v. Kamehameha Schools/Bernice Pauahi Bishop Estate,* 563 U.S. 988 (2011). The rule further is not one of administrative convenience but rather protects the public's legitimate interest in knowing of all the facts involved, including the identities of the parties:

> It is axiomatic that lawsuits are public events and that the public has a legitimate interest in knowing the facts involved, including the identifies of the parties. A more technical consideration for disfavoring fictitious pleadings involves the potential inability to fix res judicata. The defendant also has a strong interest in knowing who is suing him.

*Doe v. Rostker*, 89 F.R.D. 158, 160, 162 (N.D. Cal. 1981). Thus, use of a fictional name as DOE does here runs afoul of the public's common law right of access to judicial proceedings. *Does I thru XXIII v. Advanced Textile Corp.,* 214 F.3d 1058, 1067 (9th Cir. 2000) (cleaned up).

Moreover, allowing the plaintiff to proceed anonymously will prejudice GVB. For example, GVB will be limited in its ability to obtain statements and discovery from other witnesses without being able to identify or refer to the plaintiff with certainty; and at trial where DOE makes assertions based on her alleged embarrassment and shame, the Court reinforces those claims by allowing the plaintiff to proceed under a pseudonym from behind a cloak of anonymity.

*See, e.g., Doe v. Skyline Automobiles, Inc.,* 375 F. Supp. 3d 401, 448-49 (S.D.N.Y. 2019) (cleaned up).

Use of pseudonyms has been permitted only in exceptional cases, and the Ninth Circuit requires the party seeking anonymity to show 1) identification creates a risk of retaliatory physical or mental harm, 2) anonymity is necessary to preserve privacy in a matter of sensitive and highly personal nature, or 3) the anonymous party is compelled to admit his or her intention to engage in illegal conduct, thereby risking criminal prosecution. *Advanced Textile, supra,* 214 F.3d at 1067-68.

Still, courts have been reluctant to grant pseudonymous status in employment cases because the typical concerns of employment plaintiffs – embarrassment, fear of future employers learning of the litigation, and general reputational harm – are common to virtually all employment lawsuits and do not rise to the level of exceptional circumstances required for anonymity. For example, in *Skyline Automobiles,* the plaintiff claimed she was drugged by a co-worker, sexually assaulted while unconscious, and subject to ridicule and sexually harassment following the incident. *Skyline Automobiles, supra,* 375 F. Supp. 3d at 405. She claimed she continued to be sexually harassed after the incident and faced retaliatory termination. *Id.* Ultimately the court refused to permit the plaintiff to proceed anonymously; as part of its evaluation it noted, among others, a) allegations of sexual assault, by themselves, insufficient to allow a plaintiff to proceed under a pseudonym; b) the *potential* for embarrassment or public humiliation, without more does not justify a request for anonymity; c) anonymity was unwarranted where the defendants already knew the plaintiff's identity; d) the issues were of the type to further the public's interest in enforcing legal and social norms, weighing against allowing plaintiff to proceed anonymously. *Id.* at 406-08. *See also Group 1 Automotive, supra,* 821 F. Supp. 3d at 546 (addressing plaintiff's request to proceed anonymously; allegations of sexual harassment and assault alone insufficient to outweigh the public's right to access court

proceedings). Though *Skyline Automobiles* is a case from the Southern District of New York, the examination undertaken by the court provides some insight.

Nothing alleged in the Complaint indicates this is an exceptional case warranting DOE's disregard of the Federal Rules of Civil Procedure. The Complaint contains no allegation DOE is at risk of retaliation or that she otherwise would be compelled to make statements subjecting her to criminal prosecution. While this case, like any other employment case, involves sensitive allegations, DOE does not identify any risk of retaliatory harm in her Complaint. Indeed, the alleged perpetrator of her harassment no longer works at GVB. The Complaint makes no allegations to indicate this case is exceptional in any way that would warrant anonymity. Finally, publicly available documents would appear to have already identified DOE. *See, e.g.,* Guam Visitors Bureau 2024 Annual Report at 10[3]; Guam Visitors Bureau 2023 Annual Report at 19[4]; Guam Visitors Breau 2022 Annual Report at 11[5]; Guam Visitors Bureau 2021 Annual Report at 13[6]; Guam Visitors Bureau 2020 Annual Report at 12[7].

Dismissal is required where, as here, the plaintiff has failed to comply with the Federal Rules of Civil Procedure by failing to include her name. *Doe v. Rostker,* 89 F.R.D. 158, 163 (N.D. Cal. 1981) (dismissing without prejudice where plaintiff improperly proceeded anonymously). *See also Roe v. State of New York,* 49 F.R.D. 279, 281-82 (S.D.N.Y. 1970) (filing failing to identify plaintiff in title or otherwise is ineffective to commence an action and must be dismissed). This matter, too, should be dismissed.

[3] Available at https://indd.adobe.com/view/f853ac85-52c5-4651-b5b4-59f7c395b001
[4] Available at https://www.guamvisitorsbureau.com/sites/default/files/13-24015_gvb_2023_annual_report-digital_fnl071124.pdf.
[5] Available at https://drive.google.com/file/d/17kkth2PEV1m6nrnviwl106n2aXZBWNoz/view.
[6] Available at https://drive.google.com/file/d/1Q4CCk50mTadUrfqnqxdqyPPT9FDF9KQu/view.
[7] Available at https://drive.google.com/file/d/1e5f6N382nLl77lIzmwSJT53YWg-pyUcu/view.

## V. INVOLUNTARY DISMISSAL UNDER FRCP RULE 41(b) IS APPROPRIATE

GVB respectfully requests this Court dismiss DOE's action with prejudice under Rule 41(b) of the Federal Rules of Civil Procedure. There is no subject matter jurisdiction and DOE has not stated valid claims for relief.

DOE also should not be allowed to replead on the grounds of futility. DOE cannot create subject matter jurisdiction where none exists. *Cf. Singer v. State Farm Mut. Auto. Ins. Co.,* 116 F.3d 373 (9th Cir. 1997) (defect in jurisdiction cannot be avoided by waiver or stipulation); 13 Wright & Miller § 3522, p. 115 (party's actions cannot vest a court with jurisdiction outside constitutional and congressional grants of jurisdiction).

Amendment also would not cure DOE's failure to state a claim upon which relief can be granted. In *Perez v. Dept. of Corrections,* the plaintiff brought a § 1983 suit against the Department of Corrections alleging failure to provide medical care; he sought to amend his Complaint to add new parties. *Perez v. Dept. of Corrections,* No. CV13-00013, 2014 WL 4467071 at *5 (D. Guam Sept. 10, 2014). The court found plaintiff's factual assertions were, as here, conclusory in nature and therefore failed to meet the pleading standard that requires a plaintiff to supply necessary details to make the claim plausible rather than merely possible. *Id.* at *8. In addition to finding the plaintiff had failed to comply with the Federal Rules of Civil Procedure, the court found the plaintiff had failed to state a claim under which relief could be granted given the applicable law and facts asserted. *Id.* at *9. Plaintiff's request to replead was denied because it failed to state a claim under which relief could be granted. *Id.* at *8. Like *Perez,* DOE has not and cannot state a claim under which relief can be granted, even if she identifies herself. Accordingly, she should not be permitted to replead.

EXHIBIT N

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice.

Respectfully submitted,

Dated: [ ]

____________________________________

**JOSEPH B. McDONALD**
**McDonald Law Office LLC**
**Attorneys for Defendant Guam Visitors Bureau**

EXHIBIT N

## CERTIFICATE OF SERVICE

I hereby certify that on [ ], 2026, I filed the foregoing with the Clerk of the District Court of Guam via the CM/ECF system which provides notice of this filing to the following attorneys of record:

DOUGLAS B. MOYLAN
ATTORNEY GENERAL OF GUAM
OFFICE OF THE ATTORNEY GENERAL
Civil Division
David A. Austin
Nicholas J. Ennis
Eric S. Wojcik
134 W. Soledad Avenue Suite 302
Hagatna, Guam 96910
Tel: (671) 475-2710
Fax: (671) 477-2493
www.guamattorneygeneral.org

RAZZANO WALSH & TORRES, P.C.
service@rwtguam.com
Joseph C. Razzano
Joshua D. Walsh
Pan American Bldg.
139 Murray Blvd. Suite 100
Hagatna, Guam 96910
Office: (671) 473-1117
Fax: (671) 477-4826
jrazzano@rwtguam.com
jwalsh@rtwguam.com

Respectfully submitted this [ ] day of [ ], 2026.

______________________________
Joseph B. McDonald
McDonald Law Office LLC
Attorneys for Defendant Guam Visitors Bureau

EXHIBIT A

Joseph B. McDonald
McDonald Law Office LLC
Ada Plaza Center, Building A
173 Aspinall Avenue, Suite 207A
*Hagåtña*, Guam 96910
Tel: (671) 588-8866
www.guam@mcdonald.law

Attorneys for Defendant Guam Visitors Bureau

IN THE DISTRICT OF GUAM

| | |
|---|---|
| JANE DOE,<br><br>Plaintiff,<br><br>vs.<br><br>GUAM VISITORS BUREAU, a Guam public corporation, and GEORGE CHIU, in his individual capacity as Chairman of the Bord of Directors of the Board of the Guam Visitors Bureau,<br><br>Defendants. | No. 1:26-cv-00017<br><br>**DECLARATION OF RUDD GUDMALIN** |

I, **Rudd Gudmalin**, declare as follows:

1. I am the Financial Controller / Director of Finance & Administration for the Guam Visitors Bureau ("GVB"). I have personal knowledge of the facts stated in this Declaration and, if called as a witness, could and would competently testify to them.

2. On June 2, 2026, at approximately 4:46 p.m., a Government Claims Act claim form was submitted on behalf of Jane Doe (the "Government Claim").

3. Attached to the claim form was Jane Doe's complaint in District Court of Guam Case No. 1:26-cv-00017.

4. Jane Doe's Government Claim is attached to this Declaration as Exhibit B.

EXHIBIT A

I declare under penalty of perjury under the laws of Guam that the foregoing is true and correct.

Executed this [ ] day of [ ] 2026, at Tamuning, Guam.

**Rudd Gudmalin**
Financial Controller / Director of Finance & Administration
Guam Visitors Bureau

EXHIBIT B

## FILING A CLAIM AGAINST THE GOVERNMENT

Please be advised that under the Government Claims Act (5 G.C.A., Chapter 6), the government has ***SIX (06) MONTHS*** in which to investigate and either grant, settle, or deny your claim.

**EXAMPLES OF DOCUMENTS NEEDED:**

***Traffic/Auto Accident***
- Copy of vehicle registration
- Copy of GPD traffic crash/accident report
- Two estimates of repair from a licensed auto repair shop
- Photographs of the damages

***Dormant Bank Account***
- Copy of bank statement or record containing name of account holder, account number, address, etc.
- Document showing proof of authorized access to the account

GUAM VISITORS BUREAU
RECEIVED
Date: 06/02/2026
Time: 4:46pm
By: AMBER C.

***Contracts/Collections***
- Copy of contract(s), invoices, purchase orders, etc.

***Personal Injury***
- Copies of medical reports, billings, receipts, etc.

Please provide ***copies*** of all documents. We are unable to make copies. ***All claims shall be filed in duplicate*** (one original and one copy). If you have any questions, please call our office at 475-2710 ext. 2115 or email governmentclaims@oagguam.org.

If you are filing a claim against an autonomous agency, you must file directly with that agency. Examples of autonomous agencies:

| | |
|---|---|
| Consolidated Commission on Utilities | Government of Guam Retirement Fund |
| Guam Airport Authority | Guam Solid Waste Authority |
| Guam Community College | Guam Visitors Bureau |
| Guam Economic Development Authority | Guam Waterworks Authority |
| Guam Housing and Urban Renewal Authority | Judiciary of Guam |
| Guam Housing Corp. | Port Authority of Guam |
| Guam Legislature | Public Defender Service Corp. |
| Guam Memorial Hospital Authority | Public Utilities Commission |
| Guam Power Authority | University of Guam |

**Office of the Attorney General**
**Douglas B. Moylan · Attorney General of Guam**
134 W Soledad Ave. · Ste. 302 · *Hagåtña*, Guam 96910 · USA
671-475-2709/10 · 671-475-2493 (fax) · *publicservice@oagguam.org* · www.guamattorneygeneral.org
***"Guam's Toughest Law Enforcers"***

Updated 8/2025

# CLAIM AGAINST THE GOVERNMENT

(Please complete the form in its entirety. **DO NOT** leave any portions blank. Write "N/A" or "None" where appropriate.)

1. Name of Claimant: Jane Doe
2. Mailing Address: Razzano Walsh & Torres, P.C., c/o Joshua D. Walsh, 139 Murray Blvd., Ste. 100, Hagatna, GU 96910
   Home/Work Address: same as above
   Email Address: eservice@rwtguam.com
3. Telephone: Work: 1(671)989-3009 Mobile: N/A Home: N/A
4. Amount of Damages you are claiming: $ 500,000.00+
5. Any other relief you are claiming: attorney's fees, costs, interest, court order (See Exhibit A p. 28)
6. Government Agency Responsible: Guam Visitors Bureau (GVB)
7. Date Claim arose: January 2025
8. Your statement of facts upon which you base your claim. Attach extra sheet(s) if necessary.
   Negligent Supervision (See Exhibit A pages 24-25).
9. Attach a copy of all documents pertaining to your claim, such as a police report, accident report or a contract.
10. The lowest estimate of repair is $ 500,000.00+
11. I have the following insurance covering this claim: None
12. I am the real party in interest except for the following parties who have an interest in this claim:
    N/A
13. I have received the following compensation/repairs from other parties: None
14. Name, address, and telephone of attorney representing claimant, if any:
    Addresses and telephone listed above are for Claimant's attorneys.

All notices will be sent to your mailing address above or if you have an attorney, to your attorney's address. If you want to change the address at which you will receive notices, you must file, in writing, a change of address with the Claims Officer.

I, JD Walsh, declare under penalty of perjury that the foregoing is true and correct.

Date: 6/2/26 Claimant's Signature [signature]
(original signature needed)

**Office of the Attorney General**
**Douglas B. Moylan · Attorney General of Guam**
134 W Soledad Ave. · Ste. 302 · *Hagåtña*, Guam 96910 · USA
671-475-2709/10 · 671-475-2493 (fax) · *publicservice@oagguam.org* · www.guamattorneygeneral.org
***"Guam's Toughest Law Enforcers"***

Updated 8/2025

# EXHIBIT A

RAZZANO WALSH & TORRES, P.C.
JOSEPH C. RAZZANO
JOSHUA D. WALSH
Pan American Building
139 Murray Blvd. Suite 100
Hagåtña, Guam 96910
Telephone: (671) 989-3009
Facsimile: (671) 989-8750
Electronic Service: eservice@rwtguam.com

***Attorneys for Plaintiff***
*Jane Doe*

**IN THE DISTRICT COURT OF GUAM**

| | |
|---|---|
| JANE DOE,<br><br>Plaintiff,<br><br>vs.<br><br>GUAM VISITORS BUREAU,<br>a *Guam public corporation*,<br>and GEORGE CHIU,<br>*in his individual capacity as Chairman of the Board of Directors of the Guam Visitors Bureau*,<br><br>Defendants. | Civil Case No.__________<br><br>**COMPLAINT; JURY TRIAL DEMAND** |

**INTRODUCTION**

Plaintiff JANE DOE ("Plaintiff" or "Doe") brings this civil action against Defendant GUAM VISITORS BUREAU ("Defendant" or "GVB"), an autonomous public corporation organized under Guam law, separate and distinct from the Government of Guam, arising from a prolonged course of severe and pervasive sexual harassment, sexual assault, retaliation, and institutional failure perpetrated by

GVB's then-President and General Manager, former governor of Guam CARL T.C. GUTIERREZ ("Mr. Gutierrez"), while acting under color of law. Mr. Gutierrez's conduct created an abusive and hostile work environment, and altered the terms and conditions of Plaintiff's employment.

Plaintiff also brings this action against GEORGE CHIU, in his individual capacity as Chairman of the Board of Directors of the Guam Visitors Bureau ("Chairman Chiu"), for intentionally allowing Mr. Gutierrez to perpetuate sexual harassment against Plaintiff on a GVB trip to Saipan.

This action seeks redress under 42 U.S.C. § 1983 for violations of the Fourteenth Amendment, attributable to Defendant's official policies, customs, and practices, including the actions of a final policymaker, the absence of effective human resources oversight, the failure to train, supervise, discipline, or protect employees, and the tolerance, ratification, and concealment of misconduct following credible findings, which were the moving force behind the deprivation of Plaintiff's rights. This Complaint also asserts Guam statutory and common law claims, including Guam's public policy prohibiting sexual harassment, sexual assault, hostile work environments, retaliation, negligent supervision, negligent training, and negligent hiring and retention.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under the Constitution and laws of the United States, including 42 U.S.C. § 1983 and the Fourteenth Amendment to the

United States Constitution, and has supplemental jurisdiction over Guam law claims under 28 U.S.C. § 1367(a) as they arise from the same case or controversy.

2. Venue is proper in this district under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this district. GVB is also a government agency located in Guam, and Chairman Chiu resides in Guam and is the Chairman of GVB in Guam.

**PARTIES**

3. Plaintiff, JANE DOE ("Plaintiff" or "Doe"), is an individual who resides in the Territory of Guam.

4. Upon information and belief, Defendant, GUAM VISITORS BUREAU ("Defendant" or "GVB"), is and has been a public corporation organized under the laws of Guam, with its principal place of business at 401 Pale San Vitores Road, Tamuning, GU 96913. Defendant is an autonomous public corporation that can "[s]ue or be sued in its own corporate name[.]" 12 GCA § 9105(c); GVB is not an instrumentality of the Government of Guam. *Bordallo v. Reyes*, 610 F. Supp. 1128 (D. Guam 1984), *aff'd*, 763 F.2d 1098 (9th Cir. 1985); *see also WSTCO Quality Feed and Supply, LLC v. Ada,* No. 17-CV-00127, 2018 WL 3244403, at *8 (D. Guam July 3, 2018).

5. GVB is not an arm of the Government of Guam for federal sovereign-immunity purposes. The federal arm-of-the-state question is governed by *Kohn v. State Bar of California*, 87 F.4th 1021 (9th Cir. 2023), and *Crowe v. Oregon State Bar*, 112 F.4th 1218 (9th Cir. 2024). The Government Claims Act's procedural reference

to "public corporation[s]" in 5 G.C.A. § 6102 governs the application of Claims Act procedures within Guam law and does not control the federal arm-of-the-state inquiry.

6. Guam did not structure GVB to share the Government of Guam's sovereign immunity. GVB was created as a public corporation that may sue and be sued in its own corporate name. 12 G.C.A. § 9105(c). The District Court of Guam and the Ninth Circuit have both determined that GVB is not an instrumentality of the Government of Guam. *Bordallo v. Reyes*, 610 F. Supp. 1128 (D. Guam 1984), *aff'd*, 763 F.2d 1098 (9th Cir. 1985). GVB's functions—tourism marketing, visitor industry promotion, and partnership management—are not core sovereign functions of the Government of Guam.

7. GVB operates with a Board of Directors that exercises independent policymaking authority over GVB's operations and personnel. Upon information and belief, the Governor of Guam does not exclusively appoint or remove GVB's Board members and does not exercise direct managerial control over GVB's day-to-day affairs.

8. GVB maintains independent revenue sources, including its statutory allocation of the hotel occupancy tax, membership fees, and partnership revenues. Upon information and belief, money judgments against GVB are paid from GVB's own funds and not from the general fund of the Government of Guam.

9. Because GVB satisfies none of the *Kohn* factors as an arm of Guam, GVB is a "person" subject to suit under 42 U.S.C. § 1983, and is not protected by Guam's inherent sovereign immunity from suit in this Court.

10. Defendant George Chiu is a resident of Guam and the Chairman of the GVB during the operative time covering the allegations in this complaint, and is sued in his individual capacity.

## GENERAL ALLEGATIONS

### Employment and Authority

11. On or about July 15, 2019, Plaintiff began employment with GVB as Executive Assistant to the President & CEO and Board Secretary.

12. In or about 2020, Mr. Gutierrez became President and General Manager of GVB and Plaintiff's direct supervisor. Mr. Gutierrez exercised significant authority over Plaintiff's employment, duties, travel, and working conditions.

### Sexual Harassment and Sexual Assault

13. On or about October 30, 2022, during a required work trip to Osaka, Japan, Mr. Gutierrez insisted Plaintiff follow him to his hotel room for medication, where he grabbed her arm, stated he wanted to kiss her, physically prevented her from leaving, and forcibly kissed her, including sticking his tongue in her mouth, then removed her blouse and bra, commented on her body, and kissed her breasts.

14. On or about November 19–22, 2022, during another required work trip to Osaka, while Plaintiff was suffering from a migraine, Mr. Gutierrez entered her hotel room without consent, ignored her request to leave, kissed her against her will,

pressed her on the bed, removed her pants, and performed nonconsensual cunnilingus while she was disoriented.

15. On or about October 23–30, 2023, during another required work trip to Osaka, Mr. Gutierrez entered Plaintiff's hotel room, pulled her toward him, kissed her, and while both were clothed, placed a massager against both their genitals and turned it on, stating he needed to "cum".

16. On or about June 4–6, 2024, during a required work trip to Saipan, Mr. Gutierrez paid for Plaintiff's travel using his personal credit card and booked hotel rooms for Plaintiff and himself at a separate hotel from other staff; when Plaintiff brought hairspray to his room at his request, he insisted she enter, compelled her due to the power imbalance, then kissed her, placed her on the bed, asked her to perform oral sex (which she refused), and digitally penetrated her against her will, triggering emotional distress and PTSD symptoms.

17. On or about August 20, 2024, after being summoned to Mr. Gutierrez's office by a colleague, Mr. Gutierrez closed the door, ordered Plaintiff to come closer, pulled her in, kissed her by forcing his tongue in her mouth, and, despite her objection, resumed aggressive kissing while stating he needed to "cum," until a knock on the door allowed her to leave.

18. Between approximately October 2022 and August 2024, Mr. Gutierrez repeatedly subjected Plaintiff to escalating acts of unwanted sexual harassment, coercion, and sexual assault during official travel and in GVB offices, under color of his authority.

19. Plaintiff experienced trauma-induced freezing and dissociation, exacerbated by illness, psychological shock, and the extreme power imbalance created by Mr. Gutierrez's position.

20. Plaintiff also experienced shame from being related by blood to Mr. Gutierrez and subjected to unwanted sexual harassment, coercion, and sexual assault.

21. Plaintiff also suffered from extreme fear from the retaliation that would come from Mr. Gutierrez's position as the President of GVB and power and influence as a former governor of Guam.

**Reporting, Investigation, and Institutional Failure**

22. Plaintiff delayed reporting earlier incidents due to fear of retaliation, Mr. Gutierrez's role as agency head, lack of understanding how to report misconduct by the head of GVB, the absence of certified human resources staff, and the lack of a safe reporting infrastructure.

23. On August 22, 2024, Plaintiff verbally reported the harassment and assault to Defendant's legal counsel, who discouraged her from reporting and indicated the Board would minimize or "sweep it under the rug".

24. On November 14, 2024, Plaintiff submitted an official written complaint to the Board Chairman, George Chiu, detailing incidents from October 2022 to August 2024.

25. On November 20, 2024, Defendant acknowledged receipt and stated it intended to complete the investigation within 30 days, resolve complaints within three weeks after, and notify complainants within 90 days of the investigation start.

26. On December 13, 2024, Plaintiff was interviewed by a third-party law firm engaged by GVB to investigate her assertions and fully disclosed the sexual assaults.

27. Mr. Gutierrez, who had resigned, refused to participate on December 14, 2024, and no disciplinary action was taken.

28. The investigation was reportedly completed on January 2, 2025, and the Board reviewed the final investigative report on January 3, 2025, but no communication was sent to Plaintiff at that time.

29. Upon information and belief, the investigator concluded that Plaintiff's accounts were credible and recommended structural improvements.

30. On April 21, 2025, Plaintiff received Defendant's first written update summarizing findings and noting possible policy violations, without mention of discipline or systemic corrective action.

31. On May 13, 2025, the new agency president, Régine Biscoe Lee, suggested Plaintiff be reassigned, but no formal plan was provided.

32. Defendant failed to act transparently or promptly, delayed communicating outcomes for more than three months after Board review, refused to provide the investigative report to Plaintiff upon request, did not assess whether

others were affected, and took no disciplinary action against Mr. Gutierrez, who refused to cooperate and faced no consequences.

**Pattern, Practice, and Culture**

33. Upon information and belief, Mr. Gutierrez's boorish sexual behavior was part of a broader culture of sexual misbehavior occurring during GVB activities and tolerated by GVB's Board, including routine use of official, government-funded travel as a pretext to visit brothels and other sexually themed establishments, fostering a culture of sexual permissiveness and pressuring accompanying male employees to participate or acquiesce.

34. Upon information and belief, there existed a broader culture of sexualized misconduct, abuse of authority, intimidation, retaliation, and tolerance of inappropriate behavior at GVB, including misuse of official travel for sexualized activities, pressure on employees to participate, repeated verbal abuse and humiliation, retaliation for raising concerns, discouragement of reporting, arbitrary enforcement of policies and favoritism, employee fear and lack of support, and failure by the Board and senior leadership to meaningfully investigate, discipline, or remediate despite warning signs and credibility findings in Plaintiff's case.

35. Upon information and belief, GVB's Board and senior leadership knew or should have known of these patterns through informal complaints, internal discussions, observable conduct, reputational knowledge, and routine oversight, yet failed to take prompt, effective corrective action.

36. These issues were known prior to and during the period of Plaintiff's harassment and assault and contributed to delayed reporting, heightened fear, and exacerbated harm.

**Lack of HR, Training, Retaliation, and Hostile Work Environment**

37. At the relevant times, Defendant lacked certified Human Resources personnel, failed to conduct required annual harassment-prevention training, and failed to implement effective EEO reporting consistent with policy.

38. Following Plaintiff's protected activity, she experienced exclusion from meetings, increased scrutiny and isolation, denial of EEO support, chastisement by the Board Chairman for accessing EEOC protocols, and pressure from the new president to waive claims and transfer into a newly created, lower-ranked position.

39. Defendant did not provide Plaintiff with updates or support personnel during sensitive meetings, failed to timely communicate investigative outcomes, and suggested reassignment without a formal plan, contributing to a continuing hostile work environment.

40. Plaintiff experienced emotional distress, anxiety, and PTSD symptoms.

41. Defendant's misconduct constituted a continuing course of conduct that rendered Plaintiff's working conditions intolerable and directly caused her damages.

42. The acts of sexual harassment, sexual assault, retaliation, and institutional inaction alleged above constitute a single, continuing unlawful course of conduct and hostile work environment, each component of which contributed to the cumulative deprivation of Plaintiff's constitutional and statutory rights, and

which culminated in acts and omissions within the limitations period applicable to each cause of action pleaded below. *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002).

43. In addition, and in the alternative, each act of sexual assault and sexual harassment alleged above is an independently wrongful, discrete act that started its own limitations clock. *St. Clair v. County of Okanogan*, 154 F.4th 1154, 1166 (9th Cir. 2025) ("each sexual assault or act of abuse constitutes an 'independently wrongful, discrete act' for statute of limitations purposes"; "sexual misconduct need not beget sexual misconduct"). The June 4–6, 2024 incident in Saipan and the August 20, 2024 incident in GVB's offices each fall within all applicable statutes of limitations as discrete acts and are independently actionable, separate from and in addition to any continuing-violation theory pleaded with respect to the hostile work environment claims.

## COUNT ONE: 42 U.S.C. § 1983 – *MONELL* LIABILITY (Fourteenth Amendment)

44. Plaintiff realleges and incorporates by reference all preceding paragraphs.

45. Defendant GVB is a "person" within the meaning of 42 U.S.C. § 1983. GVB is a public corporation organized under Guam law, may sue and be sued in its own corporate name under 12 GCA § 9105(c), and is not an arm or instrumentality of the Government of Guam. *Bordallo v. Reyes*, 610 F. Supp. 1128 (D. Guam 1984), *aff'd*, 763 F.2d 1098 (9th Cir. 1985).

46. At all relevant times, Carl T.C. Gutierrez served as the President and General Manager of GVB and acted under color of territorial law.

47. Mr. Gutierrez's repeated acts of sexual harassment and sexual assault against Plaintiff between October 2022 and August 2024—including each of the incidents alleged above—were purposeful, invidious, and motivated by Plaintiff's gender. Those acts deprived Plaintiff of her right under the Equal Protection Clause of the Fourteenth Amendment to be free from intentional, gender-based discrimination by a state actor. *Sampson v. County of Los Angeles*, 974 F.3d 1012, 1023 (9th Cir. 2020); *Bator v. Hawaii*, 39 F.3d 1021, 1028 (9th Cir. 1994).

48. GVB is liable for that deprivation because each of the following official policies, customs, and practices was a moving force behind the constitutional violation. Plaintiff pleads these theories in the alternative.

**A. Custom and Practice**

49. Courts sustain a section 1983 claim against a government entity for sexual harassment under the Equal Protection Clause where "the state employee's discriminatory conduct [is] representative of an official policy or custom of the institution, or [is] taken by an official with final policymaking authority." *Rost ex rel. K.C. v. Steamboat Springs RE-2 School District*, 511 F.3d 1114, 1125 (10th Cir. 2008). In the absence of a formal policy, it "may still be liable for the widespread and persistent practice of sexual harassment which constitutes a custom." *Id.*

50. GVB maintained a widespread, longstanding, and well-settled custom and practice of tolerating, concealing, and facilitating sexualized misconduct by senior leadership during official agency travel and within GVB offices.

51. That custom included: routine use of official, government-funded travel as a pretext for visits to brothels and other sexually themed establishments at the direction of senior leadership; assignment of younger female subordinates to accompany senior male officials on official travel without any legitimate business necessity; tolerance of repeated verbal and physical sexual conduct toward female subordinates; arbitrary enforcement of any nominal anti-harassment policy; informal pressure on employees to acquiesce or remain silent; and the absence of any meaningful Board-level oversight of the President's conduct on official agency business.

52. That custom was so persistent, widespread, and known to GVB's Board of Directors and senior leadership—through informal complaints, internal discussions, observable conduct, and reputational knowledge—that it had the force of official policy. *Monell v. Department of Social Services*, 436 U.S. 658, 690–91 (1978).

**B. Ratification**

53. Under GVB's enabling statute and applicable Guam law, the GVB Board of Directors is the final policymaking authority for GVB on personnel matters concerning the President and General Manager.

54. On November 14, 2024, Plaintiff submitted a written complaint to Board Chairman George Chiu detailing Mr. Gutierrez's sexual harassment and sexual assault.

55. On December 13, 2024, Plaintiff was interviewed by a third-party law firm engaged by GVB to investigate her account, and she fully disclosed the sexual assaults. Upon information and belief, the investigator concluded that Plaintiff's accounts were credible and recommended structural improvements.

56. On January 3, 2025, the GVB Board reviewed the final investigative report. The Board took no disciplinary action against Mr. Gutierrez, communicated no outcome to Plaintiff for more than three months, refused to provide the investigative report to Plaintiff upon request, did not assess whether other employees were affected, and took no corrective structural action.

57. The Board's review of the credibility findings and its decision not to discipline, communicate, or correct constitutes ratification of Mr. Gutierrez's conduct and the basis for it by GVB's final policymaking authority. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).

**C. Failure to Train and Maintain Functional Reporting Infrastructure**

58. The constitutional duty of public-employer supervisors to investigate and act on known sexual harassment has been clearly established in the Ninth Circuit since at least *Bator v. Hawaii*, 39 F.3d 1021, 1028–29 (9th Cir. 1994).

59. Notwithstanding that established duty, at all relevant times GVB failed to provide its Board of Directors with any training on the Board's responsibility to

supervise the President and General Manager, to receive and investigate reports of harassment, or to act on known misconduct by senior leadership.

60. GVB also failed to employ certified Human Resources personnel, failed to train any existing personnel on the receipt, investigation, and handling of sexual-harassment complaints, failed to maintain a functional Equal Employment Opportunity reporting mechanism through which employees could report misconduct without exposure to retaliation by the person being reported, and failed to train its employees on the channels through which they could safely report misconduct by the President and General Manager.

61. The need for each of these training and infrastructure components is plainly obvious. The conduct alleged is not an unforeseeable misstep that defendants might be expected to avoid without training, but the institutional architecture that determines whether known sexual harassment by senior leadership is investigated, reported, and stopped. *City of Canton v. Harris*, 489 U.S. 378, 390 (1989).

62. GVB's Board of Directors knew, or in the exercise of reasonable care should have known, that the absence of these training and reporting structures in an agency whose senior leadership routinely traveled with junior female subordinates and engaged in known sexualized conduct created an obvious and substantial risk that constitutional violations would occur and would go unredressed.

63. GVB's failure to provide that training and to maintain that infrastructure, in the face of the known risk, reflects deliberate indifference to the

constitutional rights of GVB's employees, including Plaintiff. *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

### D. Causation and Damages

64. Each policy, custom, and practice identified above was a moving force behind the constitutional deprivations Plaintiff suffered. *Monell,* 436 U.S. at 694; *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 404 (1997).

65. But for GVB's custom of tolerating sexualized misconduct, the Board's ratification of Mr. Gutierrez's conduct after its review of the investigative report, and GVB's failure to provide basic anti-harassment training and reporting structures, the constitutional violations alleged in this Complaint would not have occurred or would have been promptly redressed.

66. As a direct and proximate result, Plaintiff has suffered, and continues to suffer, severe emotional distress, anxiety, post-traumatic stress disorder, loss of enjoyment of her employment, lost wages and benefits, future medical and therapeutic expenses, and other compensatory damages in an amount to be proven at trial, but in no event less than $20,000,000.00.

67. Plaintiff is entitled to compensatory damages, nominal damages, declaratory and injunctive relief, costs, and reasonable attorney's fees under 42 U.S.C. § 1988.

## COUNT TWO: 42 U.S.C. § 1983 –
## INDIVIDUAL LIABILITY AGAINST CHAIRMAN GEORGE CHIU
## (Fourteenth Amendment)

68. Plaintiff realleges all preceding paragraphs.

69. Defendant Chairman George Chiu was at all relevant times aware, or in the exercise of reasonable oversight should have been aware, that the President routinely and systematically manipulated official agency travel itineraries and staff assignments to ensure that younger, attractive female subordinates were designated as his primary travel companions.

70. These assignments were frequently made without any legitimate business necessity or professional justification; indeed, Defendant Chairman knew that more qualified subject-matter experts and senior personnel were regularly displaced or barred from travel to facilitate the President's preference for the company of specifically selected female staff.

71. Upon information and belief, this predatory pattern of 'travel grooming' extended beyond official agency business to include trips that were entirely unrelated to the organization's mission, yet were sanctioned or funded by the agency, during which younger women, including the Plaintiff, were again assigned to accompany the President.

72. Despite having the authority and the duty to intervene, Defendant Chairman consciously disregarded the clear signs of the President's predatory predilections and the misuse of public resources. By turning a blind eye to these recurring travel irregularities and the displacement of qualified personnel,

Defendant Chairman acted with deliberate indifference to the constitutional rights of agency employees and the creation of a hostile work environment, effectively ratifying the President's conduct as the unofficial custom and practice of the organization.

73. Upon information and belief, despite receiving credible reports of the President's predatory predilections, Defendant Chairman failed to initiate an independent investigation, effectively granting the President 'de facto' immunity for his actions.

74. In June of 2024, the President and GVB marketing manager, Mark Manglona, were scheduled to go to Saipan for a work-related trip.

75. Plaintiff was not scheduled for that trip.

76. The Board of Directors, including Defendant Chiu, reviewed the travel for the President, and, upon information and belief, Defendant Chiu knew that only the President and the marketing manager were scheduled to attend this trip to Saipan.

77. At the last minute, the President ordered Plaintiff to attend this trip to Saipan.

78. GVB purchased rooms at the Surfrider Resort Hotel for the President and Mark Manglona.

79. There were no more rooms available for Plaintiff at the Surfrider Resort Hotel originally booked by GVB.

80. The President also wanted Plaintiff to stay at the same hotel as him in Saipan.

81. To accomplish this, the President called Willie Tan on the phone.

82. Willie Tan owns, at least in part, Tan Holdings Corporation, which owns the Crowne Plaza Resort Saipan.

83. After speaking with Willie Tan, the President informed Plaintiff that he found a room at the Crowne Plaza Resort Saipan.

84. The President then took everyone to the Crowne Plaza Resort Saipan.

85. Once at the Crowne Plaza Resort Saipan, the President obtained his room key, and informed Plaintiff that he also had a room at the Crowne Plaza Resort Saipan..

86. Chairman Chiu is the Executive Vice President of Tan Holdings Corporation.

87. Upon information and belief, Chairman Chiu knew that both the President and Plaintiff were staying at the Crowne Plaza Resort Saipan, the hotel not approved nor purchased by GVB for this official work trip.

88. Chairman Chiu was also in Saipan during this trip.

89. Chairman Chiu saw Plaintiff, President, and Mark Manglona in Saipan during this trip at a Japanese restaurant in the Crowne Plaza Resort Saipan.

90. Chairman Chiu should have questioned why Plaintiff was there and why she was staying at the same hotel as President.

91. Chairman Chiu should have recognized that the President was engaging in his predatory predilections again and likely subjecting Plaintiff to sexual harassment.

92. Knowing that the President intentionally chose a hotel away from the hotel chosen by GVB, Chairman Chiu ignored the substantial risks of harm to Plaintiff and failed to take remedial action.

93. Chairman Chiu, who has authority and control over the Crowne Plaza Resort Saipan, should have also investigated what was occurring at that hotel.

94. By intentionally refusing to do so and allowing the President to stay elsewhere from the authorized GVB hotel and to have Plaintiff stay at the Crowne Plaza Hotel, Chairman Chiu perpetuated a dangerous condition that led to Plaintiff being sexually harassed.

95. Knowledge of these circumstances combined with the President's behavior establishes that Chairman Chiu was reckless and callously and deliberately indifferent to Plaintiff's rights and did nothing to stop the President from harming Plaintiff.

96. Chairman Chiu should have refused the President and ordered he return to the other hotel and not have Plaintiff stay with him away from the sanctioned GVB hotel.

97. Instead, Chairman Chiu allowed it to happen despite knowing the President's known predilections.

98. Defendant Chairman maintained a board structure and policy that intentionally isolated the President from standard oversight, preventing employees from reporting misconduct directly to the Board of Directors.

99. Defendant Chairman's failure to act in the face of a known and substantial risk of sexual assault/harassment was not the result of mere oversight, but a conscious and deliberate choice to prioritize the President's tenure over the safety of the agency's employees.

100. The Chairman's deliberate indifference was a moving force behind the Plaintiff's injuries during the June 2024 trip, as the President was emboldened to continue his predatory behavior by the knowledge that the Board, through the Chairman, would not intervene.

101. Complete inaction in the face of claimed harassment cannot be objectively reasonable conduct entitling a supervisor to qualified immunity

102. At all relevant times, Chairman Chiu was acting under color of law.

103. Chairman Chiu's involvement was the proximate cause of Plaintiff's injuries.

104. Chairman Chiu's involvement in this deprivation of Plaintiff's constitutional rights has caused her to suffer damages in an amount to be determined at trial, but in no event less than $20,000,000.00.

//

//

## COUNT THREE: 42 U.S.C. § 1983 — CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS (Against Defendant George Chiu in his Individual Capacity)

105. Plaintiff realleges all preceding paragraphs.

106. 42 U.S.C. § 1983 creates a cause of action against any person who, acting under color of state or territorial law, conspires with others to deprive any person of rights secured by the Constitution and laws of the United States. *Crowe v. County of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010); *Mendocino Environmental Center v. Mendocino County*, 192 F.3d 1283, 1301 (9th Cir. 1999).

107. To establish a § 1983 conspiracy claim, a plaintiff must show: (1) an agreement or meeting of the minds between two or more persons; (2) the agreement was to deprive the plaintiff of rights protected by the Constitution; (3) an actual deprivation of those rights occurred; and (4) the conspirators acted under color of state or territorial law.

108. At all relevant times, Defendant Chiu acted under color of territorial law by virtue of his position as Chairman of the Board of Directors of GVB. Carl T.C. Gutierrez likewise acted under color of territorial law by virtue of his position as President and General Manager of GVB.

109. Defendant Chiu and Mr. Gutierrez reached an agreement or meeting of the minds, express or tacit, to facilitate, protect or allow Mr. Gutierrez's predatory conduct toward Plaintiff and other junior female subordinates. The agreement is established by, among other facts:

110. (a) Chiu's actual or constructive knowledge of Mr. Gutierrez's predatory pattern, derived from informal complaints, internal Board discussions, observable conduct on official agency travel, reputational knowledge, and the findings of the third-party investigation engaged by GVB;

111. (b) Chiu's deliberate choice not to investigate or intervene in Mr. Gutierrez's known conduct, despite his authority and duty as Board Chairman to do so;

112. (c) Chiu's affirmative facilitation of the June 2024 Saipan hotel arrangement, including by leveraging his concurrent position as Executive Vice President of Tan Holdings Corporation, owner of the Crowne Plaza Resort Saipan, to provide Mr. Gutierrez with lodging separate from the GVB-approved hotel and proximate to Plaintiff's room;

113. (d) Chiu's personal presence at the Crowne Plaza Resort Saipan during the June 2024 trip, including his observation of Plaintiff in Mr. Gutierrez's company at the hotel restaurant, without taking any corrective action; and

114. (e) Chiu's maintenance of a Board governance structure that intentionally isolated the President and General Manager from standard oversight and that prevented employees from reporting misconduct directly to the Board.

115. The object of the conspiracy was to deprive Plaintiff of her right under the Equal Protection Clause of the Fourteenth Amendment to be free from intentional, gender-based discrimination and harassment by a state actor, and to insulate Mr. Gutierrez from accountability for that conduct.

116. The conspiracy resulted in actual deprivations of Plaintiff's constitutional rights, including but not limited to the June 4–6, 2024 sexual assault at the Crowne Plaza Resort Saipan and the subsequent retaliation, exclusion from meetings, increased scrutiny, denial of EEO support, and pressure to accept a demoted position described in paragraphs above.

117. As a direct and proximate result of the conspiracy, Plaintiff has suffered, and continues to suffer, severe emotional distress, anxiety, post-traumatic stress disorder, loss of enjoyment of her employment, lost wages and benefits, future medical and therapeutic expenses, and other compensatory damages.

118. Plaintiff is entitled to compensatory damages, punitive damages against Chiu in his individual capacity, costs, and reasonable attorney's fees under 42 U.S.C. § 1988, in an amount to be proven at trial but in no event less than $20,000,000.00.

**COUNT FOUR: NEGLIGENT SUPERVISION**
**(Guam Common Law)**

119. Plaintiff realleges all preceding paragraphs.

120. GVB through its Board, owed a duty of reasonable care to supervise and control the workplace conduct of its President and General Manager, including by implementing harassment prevention training, effective reporting mechanisms, and prompt investigation and corrective action GVB breached its duty by failing to exercise reasonable supervision and control and by failing to implement basic safeguards, including lack of effective Board oversight and checks, failure to implement and communicate reporting mechanisms and timely resolution procedures, failure to provide annual harassment prevention and EEO training,

absence of qualified HR support, discouragement of reporting, and failure to take prompt corrective action

121. The Board reviewed the final investigative report on January 3, 2025, yet no timely corrective communication or discipline followed, and Plaintiff did not receive results until more than three months later.

122. Out of an abundance of caution and without conceding that GVB is an instrumentality of the Government of Guam, Plaintiff has filed a notice with the Government of Guam pursuant to the Government Claims Act and will submit any response to the Court once it is received. Plaintiff maintains the position that GVB is a separate public corporation that is not an arm of the Government of Guam.

123. As a result of Defendant's negligence, Plaintiff has suffered damages in an amount to be determined at trial, but in no event less than $500,000.00.

**COUNT FIVE: NEGLIGENT TRAINING**
**(Guam Common Law; Public Policy)**

124. Plaintiff realleges all preceding paragraphs.

125. GVB owed a duty to reasonably train executives, managers, and staff on harassment prohibitions, workplace boundaries, reporting mechanisms, and consequences for violations, but failed to provide adequate training, including failing to conduct required annual harassment-prevention training during the relevant period, leaving Plaintiff and colleagues untrained, lacking support systems and trained HR staff, and discouraging escalation by telling Plaintiff the Board would "sweep it under the rug".

126. The absence of functioning EEOC training and protocols created a foreseeable and unreasonable risk of unlawful harassment and delayed reporting, which materialized here, and GVB's negligent training was a substantial factor in causing Plaintiff's injuries.

127. Out of an abundance of caution and without conceding that GVB is an instrumentality of the Government of Guam, Plaintiff has filed a notice with the Government of Guam pursuant to the Government Claims Act and will submit any response to the Court once it is received. Plaintiff maintains the position that GVB is a separate public corporation that is not an arm of the Government of Guam.

128. As a result of Defendant's negligence, Plaintiff has suffered damages in an amount to be determined at trial, but in no event less than $500,000.00.

**COUNT SIX: NEGLIGENT HIRING AND RETENTION**
**(Guam Common Law)**

129. Plaintiff realleges all preceding paragraphs.

130. Defendant hired Carl T.C. Gutierrez as President and General Manager, placing him in authority over employees, including Plaintiff, and retained him despite warning signs and red flags indicating unfitness, including reports of unwanted sexual advances and abuse of authority and observations of behavior inconsistent with workplace standards.

131. GVB's lack of effective reporting mechanisms prevented receipt of information it otherwise would have obtained, creating a foreseeable risk of harm to employees.

132. As a direct and proximate result of negligent hiring and retention, Plaintiff suffered repeated harassment and assault, emotional distress including anxiety and PTSD symptoms.

133. Out of an abundance of caution and without conceding that GVB is an instrumentality of the Government of Guam, Plaintiff has filed a notice with the Government of Guam pursuant to the Government Claims Act and will submit any response to the Court once it is received. Plaintiff maintains the position that GVB is a separate public corporation that is not an arm of the Government of Guam.

134. As a result of Defendant's negligence, Plaintiff has suffered damages in an amount to be determined at trial, but in no event less than $500,000.00.

## PRAYER FOR RELIEF

1. For Count One, enter judgment in favor of Plaintiff in the amount of not less than $20,000,000.00;

2. For Count Two, enter judgment in favor of Plaintiff in the amount of not less than $20,000,000.00;

3. For Count Three, enter judgment in favor of Plaintiff in the amount of not less than $20,000,000.00;

4. For Count Four, enter judgment in favor of Plaintiff in the amount of not less than $500,000.00;

5. For Count Five, enter judgment in favor of Plaintiff in the amount of not less than $500,000.00;

6. For Count Six, enter judgment in favor of Plaintiff in the amount of not less than $500,000.00;

7. Enjoin Defendant Guam Visitors Bureau from engaging in further acts of sexual harassment, retaliation, or discrimination against Plaintiff or any other employee, and require Defendant to implement and maintain effective anti-harassment policies, annual training, and reporting mechanisms consistent with federal law;

8. Award costs to bring this action;

9. Award interest for pre- and post-judgment interest as allowed by law;

10. Award attorney's fees pursuant to 42 USC § 1988; and

11. Award such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial in the above entitled action.

Respectfully submitted on June 1, 2026.

**RAZZANO WALSH & TORRES, P.C.**

By: */s/ Joseph C. Razzano*
**JOSEPH C. RAZZANO**
**JOSHUA D. WALSH**
*Attorneys for Plaintiff*
*Jane Doe*